UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRUCE CARPER, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TMC THE METALS COMPANY INC. F/K/A SUSTAINABLE OPPORTUNITIES ACQUISITION CORP., GERARD BARRON, and SCOTT LEONARD,<br><br>Defendants. | Case No.  1:21-cv-05991-EK-SJB<br><br>MEMORANDUM OF LAW IN SUPPORT OF MOTION OF POINT12 DIVERSIFIED FUND, LP AND KYLE AUTRY FOR CONSOLIDATION, APPOINTMENT AS CO-LEAD PLAINTIFFS, AND APPROVAL OF LEAD COUNSEL |
| PHUOC CHAN TRAN, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TMC THE METALS COMPANY INC. F/K/A SUSTAINABLE OPPORTUNITIES ACQUISITION CORP., GERARD BARRON, and SCOTT LEONARD,<br><br>Defendants. | Case No.  1:21-cv-06325-ARR-CLP |

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT .......................................................................................................1

STATEMENT OF FACTS ............................................................................................................2

ARGUMENT ...............................................................................................................................4

      A.     THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL
            PURPOSES.......................................................................................................4

      B.     POINT12 AND AUTRY SHOULD BE APPOINTED CO-LEAD
            PLAINTIFFS .....................................................................................................5

            1.     Point12 and Autry Are Willing to Serve as Class Representatives ............6

            2.     Point12 and Autry Have the "Largest Financial Interest" ..........................7

            3.     Point12 and Autry Otherwise Satisfy the Requirements of Rule 23
                 of the Federal Rules of Civil Procedure.........................................................8

            4.     Point12 and Autry Will Fairly and Adequately Represent the
                 Interests of the Class and Are Not Subject to Unique Defenses................11

      C.     CO-LEAD PLAINTIFFS' SELECTION OF COUNSEL SHOULD BE
            APPROVED .....................................................................................................11

CONCLUSION............................................................................................................................13

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barnet v. Elan Corp., PLC*,
236 F.R.D. 158 (S.D.N.Y. 2005) ................................................................................................10

*Bassin v. Decode Genetics, Inc.*,
230 F.R.D. 313 (S.D.N.Y. 2005) ..................................................................................................5

*Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*,
252 F.R.D. 188 (S.D.N.Y. 2008) ..................................................................................................4

*Chahal v. Credit Suisse Grp. AG*,
No. 18-CV-2268 (AT) (SN), 2018 WL 3093965 (S.D.N.Y. June 21, 2018).............................7

*Dookeran v. Xunlei Ltd.*,
No. 18-cv-467 (RJS), 2018 WL 1779348 (S.D.N.Y. Apr. 12, 2018) .........................................9

*Foley v. Transocean Ltd.*,
272 F.R.D. 126 (S.D.N.Y. 2011) ..................................................................................................9

*Greebel v. FTP Software*,
939 F. Supp. 57 (D. Mass. 1996) ..................................................................................................8

*In re Blue Apron Holdings, Inc. Sec. Litig.*,
No. 17-CV-4846 (WFK) (PK), 2017 WL 6403513 (E.D.N.Y. Dec. 15, 2017).......................10

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001).................................................................................................7, 10

*In re Comverse Tech., Inc. Sec. Litig.*,
No. 06-CV-1825 (NGG) (RER), 2007 WL 680779 (E.D.N.Y. Mar. 2, 2007) ...................7, 12

*In re GE Sec. Litig.*,
No. 09 Civ. 1951 (DC), 2009 WL 2259502 (S.D.N.Y. July 29, 2009) ...............................4, 5

*In re Molson Coors Brewing Co. Sec. Litig.*,
233 F.R.D. 147 (D. Del. 2005) ...................................................................................................12

*In re Olsten Corp. Sec. Litig.*,
3 F. Supp. 2d 286 (E.D.N.Y. 1998) ..........................................................................................7, 8

*In re Orion Sec. Litig.*,
No. 08 Civ. 1328 (RJS), 2008 WL 2811358 (S.D.N.Y. July 7, 2008) .......................................9

*In re Oxford Health Plans, Inc. Sec. Litig.*,
182 F.R.D. 42 (S.D.N.Y. 1998) ................................................................................8

*In re Tronox, Inc. Sec. Litig.*,
262 F.R.D. 338 (S.D.N.Y. 2009) ..............................................................................4

*Janbay v. Canadian Solar, Inc.*,
272 F.R.D. 113 (S.D.N.Y. 2010) ..............................................................................9

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
311 F.R.D. 373 (S.D.N.Y. 2015) ............................................................................12

*Lax v. First Merchants Acceptance Corp.*,
No. 97 C 2715, 1997 WL 461036 (N.D. Ill. Aug. 6, 1997).....................................7

*Louisiana Mun. Police Employees' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*,
No. 2:11-CV-289, 2012 WL 12985571 (D. Vt. Apr. 27, 2012) ..............................11

*Malcolm v. Nat'l Gypsum Co.*,
995 F.2d 346 (2d Cir. 1993).....................................................................................4

*Nurlybaev v. ZTO Express (Cayman) Inc.*,
No. 17-CV-06130 (LTS) (SN), 2017 WL 5256769 (S.D.N.Y. Nov. 13, 2017) ........7

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*,
229 F.R.D. 395 (S.D.N.Y. 2004) ..............................................................................7

*W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*,
No. CIV.A. 13-6731, 2014 WL 1395059 (E.D. Pa. Apr. 10, 2014) .......................11

*Weltz v. Lee*,
199 F.R.D. 129 (S.D.N.Y. 2001) ............................................................................10

**Statutes**

15 U.S.C. § 78u-4(a)(3)(B) ................................................................................ *passim*

PSLRA ............................................................................................................... *passim*

**Rules**

Fed. R. Civ. P. 23 .............................................................................................. *passim*

Fed. R. Civ. P. 42 ..................................................................................................1, 4

Movants Point12 Diversified Fund, LP ("Point12") and Kyle Autry ("Autry") respectfully submit this Memorandum of Law in support of their motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), and Federal Rule of Civil Procedure 42, for the entry of an Order: (1) consolidating the above-captioned related actions (the "Related Actions"); (2) appointing Point12 and Autry as Co-Lead Plaintiffs on behalf of persons or entities who purchased or otherwise acquired TMC the metals company Inc. f/k/a Sustainable Opportunities Acquisition Corp. ("TMC" or the "Company") securities between March 4, 2021 and October 5, 2021, inclusive (the "Class Period") (the "Class"); and (3) approving proposed Co-Lead Plaintiff's selection of Pomerantz LLP ("Pomerantz") as Lead Counsel for the Class.

## **PRELIMINARY STATEMENT**

The Complaints in the Related Actions allege that TMC and certain of its officers defrauded investors in violation of the Exchange Act. TMC investors, including Point12 and Autry, incurred significant losses following the disclosure of the alleged fraud, which caused the prices of TMC securities to fall sharply, damaging Point12 and Autry and other TMC investors.

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant or group of movants that possesses the largest financial interest in the outcome of the action and that satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). In connection with their purchases of TMC securities during the Class Period, Point12 and Autry incurred losses of approximately $198,370. *See* Declaration of Jeremy A. Lieberman in Support of Motion ("Lieberman Decl."), Ex. A. Accordingly, Point12

1

and Autry believe that they have the largest financial interest in the relief sought in the Related Actions.

Beyond their considerable financial interest, Point12 and Autry also meet the applicable requirements of Rule 23 because their claims are typical of absent Class members and because they will fairly and adequately represent the interests of the Class.

In order to fulfill their obligations as Co-Lead Plaintiffs and vigorously prosecute the Related Actions on behalf of the Class, Point12 and Autry have selected Pomerantz as Lead Counsel for the Class. Pomerantz is highly experienced in the area of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firm's resume.

Accordingly, Point12 and Autry respectfully request that the Court enter an order consolidating the Related Actions, appointing them as Co-Lead Plaintiffs for the Class, and approving their selection of Pomerantz as Lead Counsel for the Class.

## STATEMENT OF FACTS

As alleged in the complaint in the Related Actions, on March 4, 2021, DeepGreen Inc. announced that it had entered into a business combination agreement with Sustainable Opportunities Acquisition Corporation, special purpose acquisition company ("SPAC") with a dedicated Environmental, Social, and Governance focus. Upon closing of the merger, the combined company was renamed TMC the metals company Inc. The combined company, TMC, began trading on the NASDAQ under the ticker symbol "TMC" on September 10, 2021.

TMC is a Canadian deep-sea minerals exploration company focused on the collection, processing, and refining of polymetallic nodules found on the seafloor of the Clarion Clipperton

2

Zone of the Pacific Ocean. The Company's purported mission is to supply metals for electric vehicle batteries with the least possible negative environmental and social impact.

Deep sea exploration rights are regulated by the International Seabed Authority ("ISA"), which, since 1994, has been authorized by the United Nations to administer and regulate deep sea exploration and mining in international waters.

TMC's primary assets are three exploration licenses granted by the ISA. These licenses, which are held via three subsidiaries, are: (i) Nauru Ocean Resources Inc. ("NORI"); (ii) Marawa Research and Exploration Limited; and (iii) Tongo Offshore Mining Limited.

On September 13, 2021, Bloomberg published an article revealing that two investors had failed to provide $330 million as part of the private investment in public equity component of TMC's go-public deal. The article also questioned TMC's "green credentials," revealing that "[e]nvironmentalists claim that TMC's activities will damage sensitive ecosystems and destroy vital biodiversity" and that "[s]ince the SPAC deal was announced in March, more than 500 scientists have signed a letter calling for a moratorium on deep-sea mining until the environmental risks are better understood."

On this news, TMC's shares fell $2.45, or over 20%, over the next two trading days to close at $10.00 on September 15, 2021, damaging investors.

Then, on October 6, 2021, before market hours, market research firm Bonitas Research released a report detailing multiple issues plaguing TMC, including that: (i) the Company had overpaid on licenses to potential undisclosed insiders; (ii) the Company had artificially inflated exploration expenses by more than 100% in order to mislead investors about the scale of its operations; (iii) there are reasons to question the Company's ownership claim of NORI; and (iv) the Company's history of affiliating with bad actors.

3

On this news, TMC shares fell $0.32 per share, or over 7%, to close at $4.14 per share on October 6, 2021, further damaging investors.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, the plaintiffs in the Related Actions and other Class members have suffered significant losses and damages.

## ARGUMENT

### A.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES

Consolidation of related cases is appropriate where, as here, the actions involve common questions of law and fact, and therefore consolidation would avoid unnecessary cost, delay, and overlap in adjudication: "If actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." Fed. R. Civ. P. 42(a); *see also Manual for Complex Litigation (Third)* § 20.123 (1995).

Consolidation is appropriate when the actions before the court involve common questions of law *or* fact.  *See* Fed. R. Civ. P. 42(a); *Malcolm v. Nat'l Gypsum Co.*, 995 F.2d 346, 350 (2d Cir. 1993) (citing *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990)); *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 344 (S.D.N.Y. 2009) (consolidating securities class actions); *Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 190 (S.D.N.Y. 2008) (same).  Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interest of judicial economy served by consolidation. *See In re GE Sec. Litig.*, No. 09 Civ. 1951 (DC), 2009 WL 2259502, at *1-*3 (S.D.N.Y. July 29,

4

2009) (consolidating actions asserting different claims against different defendants over different class periods).

The Related Actions at issue here clearly involve common questions of law ***and*** fact. Each action was brought against the Company, as well as certain officers and directors of the Company, in connection with violations of the federal securities laws.  Accordingly, the Related Actions allege substantially the same wrongdoing—namely, that Defendants issued materially false and misleading statements and omissions that artificially inflated the price of the Company's securities and subsequently damaged the Class when the Company's share price crashed as the truth emerged.  Consolidation of the Related Actions is therefore appropriate.  *See Bassin v. Decode Genetics, Inc.*, 230 F.R.D. 313, 315 (S.D.N.Y. 2005) (consolidation of securities class actions is particularly appropriate in the context of securities class actions where the complaints are based on the same statements and the defendants will not be prejudiced); *In re GE*, 2009 WL 2259502, at *2 ("Consolidation promotes judicial convenience and avoids unnecessary costs to the parties.").

### B.    POINT12 AND AUTRY SHOULD BE APPOINTED CO-LEAD PLAINTIFFS

Point12 and Autry should be appointed Co-Lead Plaintiffs because they have the largest financial interest in the Related Actions and otherwise meet the requirements of Rule 23. Section 21D(a)(3)(B) of the PSLRA sets forth procedures for the selection of lead plaintiff in class actions brought under the Exchange Act.  The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of the class action by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(i) &(ii).

Further, under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), the Court is directed to consider all motions by plaintiffs or purported class members to appoint lead plaintiff filed in response to any such notice.  Under this section, the Court "shall" appoint "the presumptively most adequate plaintiff" to serve as lead plaintiff and shall presume that plaintiff is the person or group of persons, that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
>  (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

As set forth below, Point12 and Autry satisfy all three of these criteria and thus are entitled to the presumption that they are the most adequate plaintiffs of the Class and, therefore, should be appointed Co-Lead Plaintiffs for the Class.

### 1.      Point12 and Autry Are Willing to Serve as Class Representatives

On October 28, 2021, counsel for plaintiff in the first-filed of the Related Actions caused a notice to be published over *Business Wire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA (the "Notice"), which announced that a securities class action had been filed against Defendants, and advised investors in TMC securities that they had until December 27, 2021—*i.e.*, 60 days— to file a motion to be appointed as Lead Plaintiff.  *See* Lieberman Decl., Ex. B.

Point12 and Autry have filed the instant motion pursuant to the Notice and have submitted signed Certifications attesting that they are willing to serve as a representative for the Class, and provide testimony at deposition and trial, if necessary.  *See id.*, Ex. C.  Accordingly, Point12 and Autry satisfy the first requirement to serve as Co-Lead Plaintiffs of the Class.

6

**2.      Point12 and Autry Have the "Largest Financial Interest"**

The PSLRA requires a court to adopt a presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii).  To the best of their knowledge, Point12 and Autry have the largest financial interest of any TMC investor or investor group seeking to serve as Lead Plaintiff.  For claims arising under federal securities laws, courts frequently assess financial interest based upon the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered.  No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 6, 1997).  In accord with other courts nationwide,[1] these *Lax* factors have been adopted and routinely applied by courts in this judicial district.  *See, e.g.*, *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); *accord In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER), 2007 WL 680779, at *6-*8 (E.D.N.Y. Mar. 2, 2007).

During the Class Period, Point12 and Autry: (1) purchased 63,100 shares of TMC securities; (2) expended $431,898 on their purchases of TMC securities; (3) retained 54,844 shares of their shares of TMC securities; and (4) as a result of the disclosures of the fraud, suffered a loss of $198,370 in connection with their Class Period purchases of TMC securities. *See* Lieberman Decl., Ex. A.  Because Point12 and Autry possess the largest financial interest in

---

[1] *See, e.g.*, *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001); *Chahal v. Credit Suisse Grp. AG*, No. 18-CV-2268 (AT) (SN), 2018 WL 3093965, at *4 (S.D.N.Y. June 21, 2018); *Nurlybaev v. ZTO Express (Cayman) Inc.*, No. 17-CV-06130 (LTS) (SN), 2017 WL 5256769, at *1 (S.D.N.Y. Nov. 13, 2017); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 404-05 (S.D.N.Y. 2004).

the outcome of this litigation, they may be presumed to be the "most adequate" plaintiffs.   15

U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

**3.      Point12 and Autry Otherwise Satisfy the Requirements of Rule 23 of the Federal Rules of Civil Procedure**

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to

possessing the largest financial interest in the outcome of the litigation, a Lead Plaintiff must

"otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure."   Rule

23(a) generally provides that a class action may proceed if the following four requirements are

satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23 (a).

In making its determination that a Lead Plaintiff satisfies the requirements of Rule 23, the

Court need not raise its inquiry to the level required in ruling on a motion for class certification;

instead a *prima facie* showing that the movant satisfies the requirements of Rule 23 is sufficient.

*Greebel v. FTP Software*, 939 F. Supp. 57, 60 (D. Mass. 1996).   Moreover, "typicality and

adequacy of representation are the only provisions relevant to a determination of lead plaintiff

under the PSLRA."   *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y.

1998) (citing *Gluck v. CellStar Corp.*, 976 F. Supp. 542, 546 (N.D. Tex. 1997); *Fischler v.

AMSouth Bancorporation*, No. 96-1567-Civ-T-17A, 1997 WL 118429, at *2 (M.D. Fla. Feb. 6,

1997)); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d at 296.

The typicality requirement of Rule 23(a)(3) "is satisfied if 'each class member's claim

arises from the same course of events, and each class member makes similar legal arguments to

8

prove the defendant's liability.'"  *In re Orion Sec. Litig.*, No. 08 Civ. 1328 (RJS), 2008 WL 2811358, at *5 (S.D.N.Y. July 7, 2008) (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)).  "[T]he claims of the class representative need not be identical [to] those of all members of the class. '[T]he typicality requirement may be satisfied even if there are factual dissimilarities or variations between the claims of the named plaintiffs and those of other class members, including distinctions in the qualifications of the class members.'"  *Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 113, 120 (S.D.N.Y. 2010) (quoting *Bishop v. N.Y. City Dep't of Hous. Pres. & Dev.*, 141 F.R.D. 229, 238 (S.D.N.Y. 1992)).

The claims of Point12 and Autry are typical of those of the Class.  Point12 and Autry allege, as do all Class members, that Defendants violated federal securities laws by making what they knew or should have known were false or misleading statements of material facts concerning the Company, or omitted to state material facts necessary to make the statements they did make not misleading.  Point12 and Autry, as did all members of the Class, purchased TMC securities during the Class Period at prices artificially inflated by Defendants' misrepresentations or omissions and was damaged upon the disclosure of those misrepresentations and/or omissions. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class claims, satisfy the typicality requirement of Rule 23(a)(3).

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 131 (S.D.N.Y. 2011); *see also Dookeran v. Xunlei Ltd.*, No. 18-cv-467 (RJS), 2018 WL 1779348, at *2 (S.D.N.Y. Apr. 12, 2018) (same).

9

Point12 and Autry are adequate representatives for the Class.  There is no antagonism between the interests of Point12 and Autry and those of the Class, and their losses demonstrate that they have a sufficient interest in the outcome of this litigation.  Moreover, Point12 and Autry have retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as the Related Actions, and submit their choice to the Court for approval pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).

Moreover, Point12 and Autry constitute an appropriate group of the type routinely appointed to serve as Lead Plaintiffs.  *See, e.g.*, *In re Blue Apron Holdings, Inc. Sec. Litig.,* No. 17-CV-4846 (WFK) (PK), 2017 WL 6403513, at *4 (E.D.N.Y. Dec. 15, 2017); *Weltz v. Lee*, 199 F.R.D. 129, 133 (S.D.N.Y. 2001) ("recogniz[ing] that appointing a group of people as co-lead plaintiffs is allowable under the PSLRA" and finding that a group of seven shareholders with the greatest loss was "presumptively the most adequate plaintiff"); *Barnet v. Elan Corp., PLC*, 236 F.R.D. 158, 162 (S.D.N.Y. 2005) (holding that "there can be no doubt" that the PSLRA permits appointment of groups and appointing group consisting of six members with the largest financial interest as lead plaintiffs); *In re Cendant Corp. Litig.*, 264 F.3d 201, 266 (3d. Cir. 2001) ("The PSLRA explicitly permits a 'group of persons' to serve as lead plaintiff") (citation omitted).

Further demonstrating their adequacy, Point12 and Autry have submitted a Joint Declaration attesting to, *inter alia*, their backgrounds, their investing experience, their understanding of the responsibilities of a Lead Plaintiff pursuant to the PSLRA, their decision to seek appointment jointly as Co-Lead Plaintiffs, and the steps that they are prepared to take to cooperatively prosecute this litigation on behalf of the Class.  *See* Lieberman Decl., Ex. D. Courts routinely appoint more than one investor as Lead Plaintiffs under such circumstances. *See, e.g.*, *Blue Apron*, 2017 WL 6403513, at *4 (appointing group of four unrelated investors that

10

submitted declaration attesting "it is prepared to work cooperatively to serve the best interests of the class," and finding that the group is not "so large as to be unwieldy and impracticable"); *W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*, No. CIV.A. 13-6731, 2014 WL 1395059, at *7-*9, *12 (E.D. Pa. Apr. 10, 2014) (appointing group and noting "declaration lay[ing] out the duties and obligations of" the group's members); *Louisiana Mun. Police Employees' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*, No. 2:11-CV-289, 2012 WL 12985571, at *3 (D. Vt. Apr. 27, 2012) (finding a joint declaration "sufficient to assure the Court that the [lead] plaintiffs will effectively manage the litigation").

### 4.    Point12 and Autry Will Fairly and Adequately Represent the Interests of the Class and Are Not Subject to Unique Defenses

The presumption in favor of appointing Point12 and Autry as Co-Lead Plaintiffs may be rebutted only upon proof "by a member of the purported plaintiff class" that the presumptively most adequate plaintiff:

> (aa)    will not fairly and adequately protect the interests of the class; or
>
> (bb)    is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

The ability and desire of Point12 and Autry to fairly and adequately represent the Class has been discussed above.  Point12 and Autry are not aware of any unique defenses Defendants could raise that would render them inadequate to represent the Class.  Accordingly, Point12 and Autry should be appointed Co-Lead Plaintiffs for the Class.

### C.    CO-LEAD PLAINTIFFS' SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to Court approval.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).  The Court should only interfere with

11

Lead Plaintiff's choice if necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); *see also Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 383 (S.D.N.Y. 2015) ("The PSLRA 'evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention.'" (quoting *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 398 (S.D.N.Y. 2008))); *In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 151 (D. Del. 2005).

Here, Point12 and Autry have selected Pomerantz as Lead Counsel for the Class. Pomerantz is highly experienced in the area of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firm's resume. *See* Lieberman Decl., Ex. E. Pomerantz recently secured a recovery of $3 billion on behalf of investors in the securities of Petróleo Brasileiro S.A. — Petrobras, the largest class action settlement in a decade and the largest settlement ever in a class action involving a foreign issuer. Petrobras is part of a long line of record-setting recoveries led by Pomerantz, including the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 06-CV-1825 (E.D.N.Y.), in June 2010. *See* Lieberman Decl., Ex. E. Most recently, Pomerantz announced as Lead Counsel on behalf of a class of Fiat investors that it has reached a $110 million settlement with the company. *Id.* As a result of Pomerantz's extensive experience in securities litigation and class actions involving issues similar to those raised in the Related Actions, Pomerantz has the skill and knowledge necessary to enable the effective and expeditious prosecution of the Related Actions. Thus, the Court may be assured that by approving the selection of Lead Counsel by Point12 and Autry, the members of the Class will receive the best legal representation available.

## CONCLUSION

For the foregoing reasons, Point12 and Autry respectfully request that the Court issue an Order: (1) consolidating the Related Actions; (2) appointing Point12 and Autry as Co-Lead Plaintiffs for the Class; and (3) approving Pomerantz as Lead Counsel for the Class.

Dated:  December 27, 2021

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
Thomas H. Przybylowski
600 Third Avenue
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
ahood@pomlaw.com
tprzybylowski@pomlaw.com

*Counsel for Point12 Diversified Fund, LP and Kyle Autry and Proposed Lead Counsel for the Class*

**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Additional Counsel for Point12 Diversified Fund, LP and Kyle Autry*

13