UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRUCE CARPER, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TMC THE METALS COMPANY INC. F/K/A SUSTAINABLE OPPORTUNITIES ACQUISITION CORP., GERARD BARRON, and SCOTT LEONARD,<br><br>Defendants. | Case No.  1:21-cv-05991-EK-SJB<br><br>MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION OF POINT12 DIVERSIFIED FUND, LP AND KYLE AUTRY FOR CONSOLIDATION, APPOINTMENT AS CO-LEAD PLAINTIFFS, AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS |
| PHUOC CHAN TRAN, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TMC THE METALS COMPANY INC. F/K/A SUSTAINABLE OPPORTUNITIES ACQUISITION CORP., GERARD BARRON, and SCOTT LEONARD,<br><br>Defendants. | Case No.  1:21-cv-06325-ARR-CLP |

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT ................................................................................................................. 7

    I.     POINT12 AND AUTRY SHOULD BE APPOINTED CO-LEAD
           PLAINTIFFS .............................................................................................. 7

          A.     Point12 and Autry Possess the Largest Financial Interest in the
                Litigation.................................................................................... 8

          B.     Point12 and Autry Satisfy the Requirements of Rule 23 .......................... 11

    II.    THE MATTHAEI GROUP IS INADEQUATE, ATYPICAL AND
           SUBJECT TO UNIQUE DEFENSES .................................................................. 12

          A.     The Matthaei Group is Subject to Unique Defenses Regarding
                its Standing.................................................................................. 12

          B.     The Matthaei Group Members' Submission of False Certifications
                Renders Them Inadequate............................................................. 13

          C.     Matthaei and Edge Harbor's Unorthodox Trading Strategies Make
                Them Atypical ............................................................................. 15

    III.   POINT12 AND AUTRY'S SELECTION OF COUNSEL SHOULD BE
           APPROVED ................................................................................................. 17

CONCLUSION............................................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aude v. Kobe Steel, Ltd.*,
   No. 17-CV-10085 (VSB), 2018 WL 1634872
   (S.D.N.Y. Apr. 4, 2018)......................................................................................7, 11

*Chahal v. Credit Suisse Grp. AG*,
   No. 18-CV-2268 (AT) (SN), 2018 WL 3093965
   (S.D.N.Y. June 21, 2018).....................................................................................1, 8

*Dookeran v. Xunlei Ltd.*,
   No. 18-cv-467 (RJS), 2018 WL 1779348
   (S.D.N.Y. Apr. 12, 2018)......................................................................................4, 11

*Dura Pharms., Inc. v. Broudo*,
   544 U.S. 336 (2005)...................................................................................... *passim*

*Eichenholtz v. Verifone Holdings, Inc.*,
   No. C 07-06140 MHP, 2008 U.S. Dist. LEXIS 64633
   (N.D. Cal. Aug. 22, 2008)................................................................................6, 9, 15

*Foley v. Transocean Ltd.*,
   272 F.R.D. 126
   (S.D.N.Y. 2011)....................................................................................................4, 11

*Foster v. Maxwell Techs., Inc.*,
   Nos. 13-cv-00580- BEN-RBB et al., 2013 U.S. Dist. LEXIS 154538, at *10
   (S.D. Cal. Oct. 24, 2013) .....................................................................................9, 10

*Galmi v. Teva Pharms. Indus. Ltd.*,
   302 F. Supp. 3d 485
   (D. Conn. 2017) ...............................................................................................3, 6, 15

*Hurst v. Enphase Energy*,
   No. 20-cv-04036-BLF, 2020 U.S. Dist. LEXIS 223696
   (N.D. Cal. Nov. 30, 2020)...................................................................................6, 16

*In re Bally Total Fitness Sec. Litig.*,
   Nos. 04 C 3530 *et al.*, 2005 U.S. Dist. LEXIS 6243
   (N.D. Ill. Mar. 15, 2005)....................................................................................4, 13

*In re Boeing Co. Aircraft Sec. Litig.*,
   No. 19-cv-02394, 2020 U.S. Dist. LEXIS 15012
   (N.D. Ill. Jan. 28, 2020) .................................................................................5, 6, 13

*In re Comverse Tech., Inc. Sec. Litig.*,
  06-CV-1825 (NGG)(RER), 2007 U.S. Dist. LEXIS 14878
  (E.D.N.Y. Mar. 2, 2007) ...................................................................................................8

*In re Critical Path*,
  156 F. Supp. 2d 1102
  (N.D. Cal. 2001)........................................................................................................7, 16

*In re Orion Sec. Litig.*,
  No. 08 Civ. 1328 (RJS), 2008 WL 2811358
  (S.D.N.Y. July 7, 2008) ............................................................................................3, 11

*In re Vonage Initial Pub. Offering Secs. Litig.*,
  No. 07-177 (FLW), 2007 U.S. Dist. LEXIS 66258
  (D.N.J. Sept. 6, 2007) ..............................................................................................5, 13

*Isaacs v. Musk*,
  Nos. 18-cv-04865-EMC *et al.*, 2018 U.S. Dist. LEXIS 200717, at *12-*13
  (N.D. Cal. Nov. 27, 2018)........................................................................................7, 16

*Janbay v. Canadian Solar, Inc.*,
  272 F.R.D. 113
  (S.D.N.Y. 2010) ........................................................................................................3, 11

*Kaplan v. Gelfond*,
  240 F.R.D. 88
  (S.D.N.Y. 2007)........................................................................................................7, 11

*Kux-Kardos v. VimpelCom, Ltd.*,
  151 F. Supp. 3d 471
  (S.D.N.Y. 2016) ..............................................................................................................9

*Marcus v. J.C. Penney Co.*,
  No. 6:13-CV-736, 2014 U.S. Dist. LEXIS 197529
  (E.D. Tex. Feb. 28, 2014) .............................................................................................17

*Nurlybaev v. ZTO Express (Cayman) Inc.*,
  No. 17-CV-06130 (LTS) (SN), 2017 WL 5256769
  (S.D.N.Y. Nov. 13, 2017) ...........................................................................................1, 8

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*,
  229 F.R.D. 395
  (S.D.N.Y. 2004) ........................................................................................................1, 8

*Rodriguez v. Draftkings, Inc.*,
  21 Civ. 5739 (PAE) *et al.*, 2021 U.S. Dist. LEXIS 219489, at *25
  (S.D.N.Y. Nov. 12, 2021) .........................................................................................4, 13

iii

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016)..................................................................................................4, 12

*Tomaszewski v. Trevena, Inc.*,
    383 F. Supp. 3d 409
    (E.D. Pa. 2019)..................................................................................................................13

*Vt. Agency of Nat. Res. v. United States ex rel. Stevens*,
    529 U.S. 765 (2000).........................................................................................................12

*Weisz v. Calpine Corp.*,
    No. C 02-1200 SBA, 2002 U.S. Dist. LEXIS 27831, at *28
    (N.D. Cal. Aug. 15, 2002)..............................................................................................7, 17

**Statutes**

15 U.S.C. § 78u–4.................................................................................................. *passim*

Private Securities Litigation Reform Act of 1995 .................................................. *passim*

**Rules**

Fed. R. Civ. P. 23................................................................................................... *passim*

iv

Movants Point12 and Autry[1] submit this Memorandum of Law in further support of their motion for consolidation, appointment as Co-Lead Plaintiffs and approval of their selection of counsel (Dkt. No. 10);[2] and in opposition to competing motions of (i) Christopher J. Matthaei ("Matthaei"), Edge Harbor Limited Partnership Trust ("Edge Harbor"), and Christopher Fargnoli ("Fargnoli") (collectively, the "Matthaei Group") (Dkt. No. 17); (ii) Tran S. Hien ("Hien") (Dkt. No. 7); and (iii) Ali S. Afaneh ("Afaneh") (Dkt. No. 14).[3]

## PRELIMINARY STATEMENT

This is a securities fraud class action on behalf of investors in TMC securities.  As with all federal class action securities fraud lawsuits, a lead plaintiff must be appointed.  The PSLRA governs that process and, pursuant to the PSLRA, the Court should appoint as lead plaintiff the movant with the largest financial interest in the outcome of the action *and* who satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  While the PSLRA does not define "financial interest," courts in the Second Circuit generally consider a movant's claimed financial loss to be the most important factor in assessing financial interest within the meaning of the PSLRA.  *See, e.g.*, *Chahal v. Credit Suisse Grp. AG*, No. 18-CV-2268 (AT) (SN), 2018 WL 3093965, at *4 (S.D.N.Y. June 21, 2018); *Nurlybaev v. ZTO Express (Cayman) Inc.*, No. 17-CV-06130 (LTS) (SN), 2017 WL 5256769, at *1 (S.D.N.Y. Nov. 13, 2017); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 404-05 (S.D.N.Y. 2004).

---

[1] All capitalized terms herein are defined in Point12 and Autry's moving brief, unless otherwise indicated.  *See* Dkt. No. 11.

[2] Unless otherwise specified, all "Dkt. No. __" citations refer to *Carper v. TMC the metals company, Inc. et al.*, 1:21-cv-05991-EK-SJB.

[3] Initially one other putative Class member, Steven Hong ("Hong"), filed a similar competing motion.  Dkt. No. 12.  On January 10, 2022, Hong filed a notice stating his non-opposition to the competing motions.  Dkt. No. 29.

1

The following table compares Point12 and Autry's financial interest in this litigation to those of the competing movants:

| Movant | Loss |
|---|---|
| Point12 and Autry | $198,370 |
| *Point12* | *$142,487* |
| *Autry* | *$55,883* |
| Hien | $40,194 |
| Afaneh | $19,573 |
| ~~Matthaei Group~~ | ~~$0~~ |
| *~~Matthaei~~* | *~~$0~~* |
| *~~Edge Harbor~~* | *~~$0~~* |
| *~~Fargnoli~~* | *~~$0~~* |

As the table reflects, Point12 and Autry, considered either in the aggregate or individually, have a larger financial interest in this litigation than any competing movant by a significant margin. Point12 and Autry incurred an aggregate loss of ***$198,370*** in connection with their purchases of TMC securities as a result of the Defendants' alleged malfeasance, several times the size of the losses of the other competing movants combined. Considered individually, Point12 and Autry respectively possess the largest and second-largest losses among the competing movants. As such, Point12 and Autry plainly have the largest financial interest within the meaning of the PSLRA of any putative Class member seeking appointment as Lead Plaintiff.

Although one group of competing movants, the Matthaei Group, claims to have incurred an aggregate loss of over $2.7 million in connection with its members' Class Period purchases of TMC securities, each of the Matthaei Group's three members only began purchasing TMC securities ***after*** the corrective disclosure of September 13, 2021—the first of the two corrective disclosures alleged in the Complaint (*see* Dkt. No. 1 ¶¶ 6-7; *Tran v. TMC the metals company Inc. et al.*, 1:21-cv-06325-ARR-CLP ("*Tran*"), Dkt. No. 1 ¶¶ 6-7)—and each sold all of their holdings of TMC securities ***before*** the second and final alleged corrective disclosure of October 6, 2021 (*see* Dkt. No. 1 ¶¶ 8-9; *Tran* Dkt. No. 1 ¶¶ 8-9). The Matthaei Investor Group's members thus

2

held *zero* TMC securities that were damaged by the corrective disclosures that laid bare TMC's malfeasance on September 13, 2021 and October 6, 2021, as alleged in the Complaint in this Action. Accordingly, the Matthaei Group's members held no securities that declined in value as a consequence of the revelation of the Defendants' alleged fraud, and thus have incurred no losses whatsoever that are recoverable in this Action pursuant the loss causation methodology mandated by the Supreme Court in *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005). With respect to fraud claims arising under Section 10(b) of the Exchange Act, "if . . . the purchaser sells the shares . . . before the relevant truth beings to leak out, *the misrepresentation will not have led to any loss*." *Id.* at 342 (emphasis added). *See also Galmi v. Teva Pharms. Indus. Ltd.*, 302 F. Supp. 3d 485, 498 (D. Conn. 2017) (disregarding losses not "directly tied to the misconduct alleged in the complaint"). The Matthaei Group thus has *zero* recoverable losses in this Action and, lacking any financial interest in this litigation, its motion must be denied.

Point12 and Autry also satisfy the typicality and adequacy requirements of Rule 23. Point12 and Autry, like all Class members, both purchased TMC securities at prices artificially inflated by the Company's misrepresentations or omissions and were damaged upon the disclosure of those misrepresentations or omissions. These shared claims, which are based upon the same legal theory, and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirements of Rule 23. *In re Orion Sec. Litig.*, No. 08 Civ. 1328 (RJS), 2008 WL 2811358, at *5 (S.D.N.Y. July 7, 2008); *Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 113, 120 (S.D.N.Y. 2010). Point12 and Autry's significant losses give them a sufficient stake in this litigation's outcome to ensure vigorous prosecution; Point12 and Autry are aware of no conflict between their interests and those of the putative Class; and in Pomerantz, Point12 and Autry have retained qualified and experienced counsel. For all of the foregoing reasons, Point12 and Autry

3

satisfy the adequacy requirements of Rule 23. *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 131 (S.D.N.Y. 2011); *Dookeran v. Xunlei Ltd.*, No. 18-cv-467 (RJS), 2018 WL 1779348, at *2 (S.D.N.Y. Apr. 12, 2018) (same).

By contrast, the Matthaei Group is inadequate and/or atypical for multiple reasons and thus disqualified from consideration irrespective of its financial interest in this litigation—which, again, is zero. First, the fact that the Matthaei Group's members did not retain ***any*** TMC securities at the times that TMC's alleged fraud came to light not only reduces its financial interest in this litigation to zero, but also subjects the group to unique defenses that disqualify it from appointment as Lead Plaintiff. The PSLRA precludes the appointment of a lead plaintiff that "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb). *See also In re Bally Total Fitness Sec. Litig.*, Nos. 04 C 3530 *et al.*, 2005 U.S. Dist. LEXIS 6243, at *19 (N.D. Ill. Mar. 15, 2005) ("The PSLRA . . . provides that we ask simply whether [a movant] is likely to be 'subject to' the unique defense . . . ; we do not have to determine that the defense is likely to succeed."). "[S]tanding requires that the plaintiff 'personally has suffered some actual or threatened injury.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (quoting *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982)). Apparently lacking any injury caused by TMC's alleged malfeasance, it is highly likely that the Matthaei Group's members will ultimately be found to lack standing to pursue securities fraud claims against the Defendants if the group is appointed as Lead Plaintiff, or at the very least will have to spend considerable time litigating this issue, at the expense of the group's capacity to pursue the Class's fraud claims.

Second, all three of the group's members are further inadequate because each submitted a facially false certification. *See, e.g., Rodriguez v. Draftkings, Inc.*, 21 Civ. 5739 (PAE) *et al.*, 2021

4

U.S. Dist. LEXIS 219489, at *25 (S.D.N.Y. Nov. 12, 2021) (denying motion by movant whose papers included "numerous and varied errors" in his transaction data, finding that "had movant been serious about his responsibilities as a budding class representative, he should not have had to have been alerted to these basic errors in the first place"); *In re Vonage Initial Pub. Offering Secs. Litig.*, No. 07-177 (FLW), 2007 U.S. Dist. LEXIS 66258, at *23, *28 n.8 (D.N.J. Sept. 6, 2007) (denying motion by movant whose certification "contained incorrect trading data and loss calculations," finding it to be "plagued with misinformation"); *In re Boeing Co. Aircraft Sec. Litig.*, No. 19-cv-02394, 2020 U.S. Dist. LEXIS 15012, at *16-*17 (N.D. Ill. Jan. 28, 2020) (denying motion by movants where errors in loss calculations demonstrated that movants either knowingly submitted incorrect information or failed to review their submissions before filing).  All three Matthaei Group members submitted Certifications, pursuant to the PSLRA, attesting, under penalty of perjury, that the schedule of transactions appended thereto accurately reflected their respective Class Period transactions in TMC securities.  *See* Dkt. No. 21-3 at *2 ¶ 4, *21 ¶ 4, *27 ¶ 4.  Yet each of these three transaction schedules contains glaring errors—specifically, by reflecting transactions of TMC common stock at prices outside of the range within which TMC shares traded on the dates in question.  For Matthaei, 468 of his 503 transactions, or 93% of all of his reported trades, were at erroneous out-of-range prices; for Edge Harbor, 463 of its 727 transactions, or 64%, were outside of the daily trading range; and for Fargnoli, 20 out of 69, or 29%, of his transactions were outside of the daily trading range.  *See* Dkt. No. 21-3 at *4-*20, *23-*33, *36-*37.  Moreover, one group member Edge Harbor, submitted a Certification reflecting options transactions (*see* Dkt. No. 21-3 at *19-*20) yet failed to include these transaction in its damages analysis (*see* Dkt. No. 21-4).  This readiness to submit false information and/or

inattentiveness to detail clearly demonstrates that the three members of the Matthaei Group are inadequate under Rule 23.

Finally, Edge Harbor and Matthaei's trading strategies render them, and thus the Matthaei Group, atypical of the Class that they seek to represent. Edge Harbor and Matthaei's trading indicates that they were day traders of TMC stock during the Class Period—that is, that they both purchased and sold TMC stock during the same trading sessions, aiming to profit from short-term price fluctuations. Edge Harbor purchased and sold all of its holdings of TMC securities—that is, was fully in and out of the market with respect to its holdings of TMC stock—on each of September 15, September 16, and September 17, 2021. *See* Dkt. No. 21-3 at *4-*9. On the following five trading days, between September 20 and September 24, 2021, Edge Harbor purchased and sold TMC shares on the same trading day multiple times. *See id.* at *9-*18. Matthaei likewise purchased TMC stock and then sold all of his shares before the end of the trading session on each of September 15 and September 17, 2021. *See id.* at *23. Courts generally decline to appoint such day traders as lead plaintiffs in PSLRA actions. *See*, *e.g.*, *Galmi v. Teva Pharms. Indus.*, 302 F. Supp. 3d 485, 504 n.10 (D. Conn. 2017) (finding day trader to "be subject to unique defense that make him an inappropriate lead plaintiff"); *Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140 MHP, 2008 U.S. Dist. LEXIS 64633, at *36 (N.D. Cal. Aug. 22, 2008) (finding that a "day-trader would not be typical of the class because the class's damages stem from reliance upon the company's financial statements, not upon daily market volatility. Specifically, it may be subject to a unique defense regarding its reliance upon publicly available information."); *Hurst v. Enphase Energy*, No. 20-cv-04036-BLF, 2020 U.S. Dist. LEXIS 223696, at *22-24 (N.D. Cal. Nov. 30, 2020) (same). Similarly, Edge Harbor's options purchases discussed *supra* at p. 6—which, again, were disclosed in its Certification but not in its damages analysis—indicate that Edge Harbor was

6

betting against the Company, by engaging in trades that would only be profitable if the value of TMC's stock declined.  Courts generally decline to appoint such investors as lead plaintiffs.  *In re Critical Path*, 156 F. Supp. 2d 1102, 1110 (N.D. Cal. 2001); *Isaacs v. Musk*, Nos. 18-cv-04865-EMC *et al.*, 2018 U.S. Dist. LEXIS 200717, at \*12-\*13 (N.D. Cal. Nov. 27, 2018); *Weisz v. Calpine Corp.*, No. C 02-1200 SBA, 2002 U.S. Dist. LEXIS 27831, at \*28 (N.D. Cal. Aug. 15, 2002).  Unlike Edge Harbor, most Class members purchased TMC securities in the good-faith expectation that the value of those securities would increase, in reliance on the Defendants' false and/or misleading statements.  Edge Harbor's options purchases thus render it highly atypical of the Class that it seeks to represent.

For the reasons set forth herein, Point12 and Autry respectfully submit that their motion should be granted in its entirety, and that the competing motions should be denied.

## ARGUMENT

## I.    POINT12 AND AUTRY SHOULD BE APPOINTED CO-LEAD PLAINTIFFS

The PSLRA creates a strong presumption that the "most adequate plaintiff"—*i.e.*, the Lead Plaintiff—is the movant or group of movants that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  The movant that has the largest financial interest need only make a *prima facie* showing at this stage that he or she satisfies the adequacy and typicality requirements of Rule 23. *See Aude v. Kobe Steel, Ltd.*, No. 17-CV-10085 (VSB), 2018 WL 1634872, at \*3 (S.D.N.Y. Apr. 4, 2018); *see also Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007).  Once this presumption is triggered, it may be rebutted only upon proof that the presumptive Lead Plaintiff will not fairly represent the interests of the Class.  15 U.S.C. § 78u–4(a)(3)(B)(iii)(II).  Here, the most adequate class representatives are Point12 and Autry.

7

**A.      Point12 and Autry Possess the Largest Financial Interest in the Litigation**

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii).  While the PSLRA itself does not provide any guidance concerning the method of calculating which plaintiff has the "largest financial interest," courts in the Second Circuit generally recognize that the amount of financial loss is the most significant factor to be considered.  *Chahal*, 2018 WL 3093965, at \*4; *Nurlybaev*, 2017 WL 5256769, at \*1; *Pirelli Armstrong Tire*, 229 F.R.D. at 404-05.

Under the foregoing analysis, no movant seeking appointment as Lead Plaintiff in the Action has alleged a larger financial interest in this litigation than Point12 and Autry.  As the table at p. 2 illustrates, Point12 and Autry's loss of nearly $200,000 is larger than the losses of the other competing movants combined.  Even considered individually, Point12 and Autry have respectively alleged the largest and second-largest losses among the competing movants.  As such, Point12 and Autry clearly have the largest financial interest within the meaning of the PSLRA of any putative Class members seeking appointment as Lead Plaintiff.

While one competing movant, the Matthaei Group, claims to have incurred a loss of over $2.7 million in connection with its Class Period purchases of TMC securities, the Matthaei Group's recoverable losses in this Action are in fact **zero**.  The seminal Supreme Court decision *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005), unambiguously established the principle that any assessment of losses for claims arising under Section 10(b) of the Exchange Act must take into account only **recoverable** losses—*i.e.*, losses actually traceable to the alleged fraud and its disclosure.  Fifteen years after *Dura*, it is by now axiomatic that if "the purchaser sells the shares . . . before the relevant truth beings to leak out, the misrepresentation will not have led to any loss."  544 U.S. at 342 (emphases added).  *See also In re Comverse Tech., Inc. Sec. Litig.*, 06-CV-1825

8

(NGG)(RER), 2007 U.S. Dist. LEXIS 14878, at *13 (E.D.N.Y. Mar. 2, 2007) ("[U]nder *Dura* and its progeny," losses are only recoverable if "proximately . . . linked to the misconduct at issue in this litigation."); *Kux-Kardos v. VimpelCom, Ltd.*, 151 F. Supp. 3d 471, 476 (S.D.N.Y. 2016) ("[I]n evaluating financial loss, courts must consider only those losses proximately caused by the defendant's misrepresentations or other fraudulent conduct."); *Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140 MHP, 2008 U.S. Dist. LEXIS 64633, at *11 (N.D. Cal. Aug. 22, 2008) ("loss causation can only be demonstrated with respect to shares retained as of the date of the corrective disclosure") (emphasis added); *Foster v. Maxwell Techs., Inc.*, Nos. 13-cv-00580- BEN-RBB et al., 2013 U.S. Dist. LEXIS 154538, at *10 (S.D. Cal. Oct. 24, 2013) ("The misrepresentation does ***not*** lead to a loss if the purchaser sells the shares ***before*** the truth is revealed.") (emphases added).

Here, a review of the Complaints in this litigation (*see generally* Dkt. No. 1; *Tran* Dkt. No. 1) and the schedules of transactions appended to the Certifications submitted by the Matthaei Group's members (Dkt. No. 21-3 at *4-*20, *23-*33, *36-*37) make it clear that none of them incurred a recoverable loss in this litigation, meaning that their respective financial interests in this litigation individually, and thus the group's aggregate financial interest, is in fact ***zero***.

The operative Complaints in the Related Actions both allege two corrective disclosures that laid bare the Defendants' alleged fraud:

- The first alleged corrective disclosure occurred on September 13, 2021, when *Bloomberg* published an article revealing that two investors had failed to provide $330 million as part of the private investment in public equity component of TMC's go-public deal. The article also questioned TMC's "green credentials," revealing that "[e]nvironmentalists claim that TMC's activities will damage sensitive ecosystems and destroy vital biodiversity" and that "[s]ince the SPAC deal was announced in March, more than 500 scientists have signed a letter calling for a moratorium on deep-sea mining until the environmental risks are better understood." Following this news, TMC's stock price fell $2.45 per share, or more than 20%, over the following two trading sessions, to close at $10.00 on September 15, 2021, damaging investors. *See* Dkt. No. 1 ¶¶ 6-7; *Tran* Dkt. No. 1 ¶¶ 6-7.

9

- The second alleged corrective disclosure occurred on October 6, 2021, when market research firm Bonitas Research released a report detailing multiple issues plaguing TMC, including that: (i) the Company had overpaid on licenses to potential undisclosed insiders; (ii) the Company had artificially inflated exploration expenses by more than 100% in order to mislead investors about the scale of its operations; (iii) there are reasons to question the Company's ownership claim of NORI; and (iv) the Company's history of affiliating with bad actors. On this news, TMC's stock price fell another $0.32 per share, or over 7%, to close at $4.14 per share on October 6, 2021, further damaging investors. *See* Dkt. No. 1 ¶¶ 8-9; *Tran* Dkt. No. 1 ¶¶ 8-9.

Meanwhile, the transaction histories submitted by the Matthaei Group's three members indicate that each only started purchasing TMC securities ***after*** the September 13 corrective disclosure, and that each sold all of these TMC securities ***before*** the October 6 corrective disclosure. Edge Harbor and Matthaei both began purchasing TMC securities on September 15—two days after the first corrective disclosure—and sold the entirely of their TMC holdings by September 24—12 days before the second corrective disclosure. *See* Dkt. No. 21-3 at *4-*20, *23-*33. Fargnoli, meanwhile, started purchasing TMC securities on September 16—three days after the first corrective disclosure—and sold all of his TMC holdings by September 23—13 days before the second corrective disclosure. *See id.* at *36-*37. Accordingly, their transaction histories, submitted under penalty of perjury, indicate that none of the group members held TMC securities on either September 13 or October 6—the dates of the only two corrective disclosures alleged in this litigation.

Having both purchased and sold ***all*** of their TMC shares between the two disclosures of the fraud at issue of this litigation, none of the Matthaei Group members actually held any TMC securities that were damages by the revelation of the Defendants' alleged fraud. Thus, ***none*** of the Matthaei Group members' claimed losses are in fact a consequence of the alleged fraud, meaning that ***none*** of their losses are recoverable in this litigation. The Matthaei Group's financial interest in the relief sought by the Class is therefore ***zero***.

10

### B.    Point12 and Autry Satisfy the Requirements of Rule 23

In addition to possessing the largest financial interest in the relief sought by the Class, Point12 and Autry have also made the requisite *prima facie* showing that they satisfy the typicality and adequacy requirements of Rule 23. *Aude*, 2018 WL 1634872, at *3; *Kaplan*, 240 F.R.D. at 94.

First, Point12 and Autry's claims satisfy the typicality requirement of Rule 23(a)(3) because their claims in the Action are based on the same legal theory and arise from the same events and course of conduct as the Class's claims. *Orion Sec. Litig.*, 2008 WL 2811358, at *5; *Janbay*, 272 F.R.D. at 120. Second, Point12 and Autry satisfy the adequacy requirement of Rule 23(a)(4) because they have a sufficient stake in the outcome of this litigation to ensure vigorous advocacy on behalf of the Class, are aware of no conflict between their interests and those of the putative Class, and, as discussed in greater detail below, they have selected counsel highly capable and experienced in prosecuting securities cases and managing complex litigation efficiently to serve as Lead Counsel for the Class. *Foley*, 272 F.R.D. at 131; *Dookeran*, 2018 WL 1779348, at *2. Point12 and Autry have further demonstrated their adequacy by submission of a Joint Declaration attesting to, *inter alia*, their respective backgrounds and investment experience; their understanding of the posture of this litigation; their understanding of the significance of his motion; their understanding of the responsibilities of a lead plaintiff appointed pursuant to the PSLRA; and their readiness to undertake those responsibilities on behalf of the Class. *See generally* Dkt. No. 11-5.

\* \* \* \*

Because Point12 and Autry have the largest financial interest in the relief sought by the Class and otherwise satisfy Rule 23, they are the presumptive "most adequate plaintiffs" of the Class within the meaning of the PSLRA.

11

To overcome the strong presumption entitling Point12 and Autry to appointment as Lead Plaintiffs, the PSLRA requires **"*proof*"** that the presumptive Lead Plaintiffs are inadequate. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (emphasis added). No such proof exists in this case and any arguments to the contrary should be flatly rejected.

## II.   THE MATTHAEI GROUP IS INADEQUATE, ATYPICAL AND SUBJECT TO UNIQUE DEFENSES

### A.   The Matthaei Group is Subject to Unique Defenses Regarding its Standing

The fact that the Matthaei Group's members have incurred zero losses that are recoverable in this litigation not only reduces the group's financial interest in this action to zero (as discussed above), it also further disqualifies the group from consideration because, having purchased and sold all of their TMC securities in the period between the two disclosures of the Company's alleged fraud, the Matthaei Group's members held zero securities on the dates of the two corrective disclosures, have incurred no injury traceable to Defendants' malfeasance and thus lack standing to pursue fraud claims in this litigation. "[S]tanding requires that the plaintiff 'personally has suffered some actual or threatened injury.'" *Spokeo*, 136 S. Ct. at 1548 (quoting *Valley Forge Christian College*, 454 U.S. at 472). "[T]he injury must affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n. 1. Standing is granted by Article III "only to redress or otherwise to protect against injury to the complaining party." *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771–72 (2000) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)). In a securities fraud action under Section 10(b) of the Exchange Act, injury-in-fact requires that the plaintiff actually held the securities at issue on which the alleged fraud was revealed to the market—*i.e.*, that the economic loss that the plaintiff incurred on its investment was actually caused by the revelation of the fraud, rather than by other market forces. *See, e.g.*, *Dura*, 544 U.S. at 343-44. As the Supreme Court held in *Dura*, "if . . . the purchaser sells the

12

shares . . . before the relevant truth beings to leak out, ***the misrepresentation will not have led to any loss***." *Dura*, 544 U.S. at 342 (emphasis added).

"The PSLRA . . . provides that we ask simply whether [a movant] is ***likely*** to be 'subject to' the unique defense . . . ; we do not have to determine that the defense is likely to succeed." *Bally Total Fitness*, 2005 U.S. Dist. LEXIS 6243, at *19 (emphasis added).  If the Matthaei Group is appointed as Lead Plaintiff, its members will clearly be forced to spend considerable time and energy litigating the question of their standing, at the expense of their ability to pursue fraud claims on behalf of the Class.  There is simply no reason to burden the Class with a Lead Plaintiff subject to such debilitating issues.

## B.  The Matthaei Group Members' Submission of False Certifications Renders Them Inadequate

The Matthaei Group is also inadequate under Rule 23 because its members' Certifications (Dkt. No. 21-3) are facially false, as each attests—under penalty of perjury—to purchases of TMC securities at prices that cannot be accurate.  Courts routinely deny lead plaintiff motions that are accompanied by false and erroneous submissions, finding such to demonstrate the movant's inadequacy.  *See, e.g., Draftkings*, 2021 U.S. Dist. LEXIS 219489, at *25 (denying motion by movant whose papers included "numerous and varied errors" in his transaction data, finding that "had movant been serious about his responsibilities as a budding class representative, he should not have had to have been alerted to these basic errors in the first place"); *Vonage*, No. 07-177 (FLW), 2007 U.S. Dist. LEXIS 66258, at *23, *28 n.8 (denying motion by movant whose certification "contained incorrect trading data and loss calculations," finding it to be "plagued with misinformation"); *Boeing*, 2020 U.S. Dist. LEXIS 15012, at *16-*17 (denying motion by movants where errors in loss calculations demonstrated that movants either knowingly submitted incorrect information or failed to review their submissions before filing); *Tomaszewski v. Trevena, Inc.*, 383

13

F. Supp. 3d 409 , 414-15 (E.D. Pa. 2019) (denying lead plaintiff motion where errors in loss charts "speak to a level of carelessness" that casts doubt that applicant possesses "the necessary adequacy and sophistication to be lead plaintiff").

Here, the schedules of transactions that the three Matthaei Group members appended to their respective Certifications—which each attests to be an accurate record of the member's Class Period transactions in TMC securities—are all facially false.  The transaction schedules reflect *hundreds* of transactions in TMC securities at prices outside of the range within which TMC stock traded on the dates in question.  Of the 727 transactions of common stock reflected on Edge Harbor's transaction schedule, 463, or 63%, were at out-of-range prices.  *See* Dkt. No. 21-3 at *4-*20; Opposition Declaration of Jeremy A. Lieberman ("Lieberman Opp. Decl."), Ex. A at 1-11.  Of the 503 transactions reflected on Matthaei's transaction schedule, 468, or 93%, were at out-of-range prices.  *See* Dkt. No. 21-3 at *23-*33; Lieberman Opp. Decl., Ex. A at 11-18.  And of the 69 transactions listed on Fargnoli's transaction schedule, 20, or 29%, were at out-of-range prices. *See* Dkt. No. 21-3 at *36-*37; Lieberman Opp. Decl., Ex. A at 18-19.  For example, on September 23, 2021, TMC common stock only traded between $5.34 and $6.40 per share on the NASDAQ stock market—yet Edge Harbor attests, under penalty of perjury, to having purchased 489,597 shares of TMC common stock at prices between *$8.99 and $9.57* per share—well above the high end of the day's trading range.  *See* Dkt. No. 21-3 at *15-*18; Lieberman Opp. Decl., Ex. A at 9-11.  Similarly, on September 20, 2021, TMC stock traded between $8.52 and $11.15 per share, yet Matthaei attests to having purchased 385,916 shares of TMC stock at prices between *$8.52 and $11.15* per share—also above the high end of the day's trading range.  *See* Dkt. No. 21-3 at *23-*26; Lieberman Opp. Decl., Ex. A at 11-14.  Likewise, on September 16, 2021, TMC stock traded between $11.14 and $13.68 per share, yet Fargnoli attests to having purchased 10,000 shares at

14

prices between ***$14.81 and $14.89*** per share—once again, well outside of the day's trading range. *See* Dkt. No. 21-3 at *36; Lieberman Opp. Decl., Ex. A at 18-19.  These are only three examples of the many inaccuracies that plague each group member's transaction schedule, which makes their Certifications demonstrably false.

One of two things must be true: either the Matthaei Investor Group's members knowingly submitted inaccurate information to the Court; or the Matthaei Investor Group's members failed to review their transaction schedules thoroughly enough to spot these errors.  In either scenario, the Matthaei Investor Group is clearly inadequate within the meaning of Rule 23, and, as such, the PSLRA mandates denial of the group's motion.

### C.    Matthaei and Edge Harbor's Unorthodox Trading Strategies Make Them Atypical

The Matthaei Group is further disqualified because two of its members, Matthaei and Edge Harbor, engaged in unorthodox trading strategies that make them atypical of the Class that the group seeks to represent.

First, Matthaei and Edge Harbor's Class Period transactions in TMC stock qualify both group members as day traders—that is, investors who execute large volumes of transactions to capitalize on intraday market price movements, with the goal of profiting from very short-term price movements.  Courts unsurprisingly decline to appoint such investors as lead plaintiffs in PSLRA actions, given that their trading is based on daily market volatility rather than in reliance upon the Defendants' alleged misrepresentations.  *See*, *e.g.*, *Galmi*, 302 F. Supp. 3d at 504 n.10 (finding day trader to "be subject to unique defense that make him an inappropriate lead plaintiff"); *Eichenholtz*, 2008 U.S. Dist. LEXIS 64633, at *36 (finding that a "day-trader would not be typical of the class because the class's damages stem from reliance upon the company's financial statements, not upon daily market volatility.  Specifically, it may be subject to a unique defense

15

regarding its reliance upon publicly available information."); *Hurst*, 2020 U.S. Dist. LEXIS 223696, at *22-24 (same).

Here, Edge Harbor purchased TMC stock and then sold all of its shares before the end of the trading session on each of September 15, September 16, and September 17, 2021. *See* Dkt. No. 21-3 at *4-*9. Edge Harbor also both purchased and sold TMC stock on each of the next five consecutive trading days, September 20 through September 24, 2021. *See id.* at *9-*18. Matthaei similarly purchased TMC stock and then exited his position entirely before the end of the trading session on each of September 15 and September 17, 2021. *See id.* at *23. As day traders, Edge Harbor and Matthaei were clearly trading to capitalize on intraday market volatility, not based on their evaluation of TMC's operations. This trading strategy makes them highly atypical of the Class that they seek to represent, which consists primarily of TMC investors who simply purchased their securities in reliance upon the Defendants' statements regarding the Company's operations and, unlike Edge Harbor and Matthaei, held those securities for significantly longer than a few hours.

Second, Edge Harbor is further atypical because certain of its Class Period transactions in TMC securities were made in the expectation that TMC's stock price would decline rather than increase, akin to short sales—that is, through these trades, Edge Harbor was, in effect, betting ***against*** the Company. For obvious reasons, courts routinely decline to appoint investors who employ such unorthodox investment strategies as lead plaintiffs in PSLRA actions for failure to satisfy the typicality requirement of Rule 23, because such transactions "raise the question of whether the seller was actually relying on the market price, and the class is not served by its representative coming under such scrutiny." *Critical Path*, 156 F. Supp. 2d at 1110; *Isaacs*, 2018 U.S. Dist. LEXIS 200717, at *12-*13 ("[T]he Court has concerns regarding the adequacy or

16

typicality of [movant] because it is a short seller[.]"); *Weisz*, 2002 U.S. Dist. LEXIS 27831, at \*28 (finding movant to be "disqualified from serving as a lead plaintiff by virtue of the fact that he admittedly sold Calpine stock 'short' during the Class Period."); *Marcus v. J.C. Penney Co.*, No. 6:13-CV-736, 2014 U.S. Dist. LEXIS 197529, at \*20-\*21 (E.D. Tex. Feb. 28, 2014) (finding short selling to be an "atypical trading practice" and holding short seller to be "subject to unique defenses and flaws that render him inadequate to serve as lead plaintiff").

Here, in a series of transactions between September 13 and September 20, 2021, Edge Harbor purchased and sold put option contracts—that is, contracts giving Edge Harbor the option to sell TMC common stock at an agreed-upon strike price on or before certain expiration dates. *See* Dkt. No. 21-3 at \*19-\*20. These trades would only be profitable for Edge Harbor, however, if TMC common stock declined in value. In other words, each purchase of a put option contract by Edge Harbor represented a bet ***against*** TMC stock. By contrast, the Class members who the Matthaei Investor Group seek to represent in this litigation invested in TMC in reliance upon the Defendants' positive statements about the Company's operations, with the simple expectation that the Company's stock price would ***increase***, to their benefit. Edge Harbor's unusual trading strategy thus clearly makes the Matthaei Group an atypical Class representative. Moreover, the fact that Edge Harbor was both purchasing and selling these option contracts on the same day further underscores the extent to which Edge Harbor was trading to take advantage of market volatility rather than in reliance on the Defendants' statements about TMC's business and operations.

## III.   POINT12 AND AUTRY'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should interfere with

17

the Lead Plaintiff's selection only when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Here, Point12 and Autry have selected Pomerantz as Lead Counsel for the Class.  As its resume reflects, Pomerantz is highly experienced in the areas of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors.  *See* Dkt. No. 11-6.  Thus, the Court may be assured that by approving Point12 and Autry's selection of counsel, the members of the Class will receive the best legal representation available.

### CONCLUSION

For all of the foregoing reasons, Point12 and Autry respectfully request that this Court enter an Order: (1) appointing Point12 and Autry as Lead Plaintiffs for the Class; and (2) approving Point12 and Autry's selection of Lead Counsel for the Class.

Dated:  January 10, 2022

Respectfully Submitted,

POMERANTZ LLP

/s/ Jeremy A. Lieberman
Jeremy A. Lieberman
J. Alexander Hood II
Thomas H. Przybylowski
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
ahood@pomlaw.com
tprzybylowski@pomlaw.com

*Counsel for Point12 Diversified Fund, LP and Kyle Autry and Proposed Lead Counsel for the Class*

18

BRONSTEIN, GEWIRTZ &
GROSSMAN, LLC
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Additional Counsel for Point12 Diversified Fund, LP and Kyle Autry*

19