UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

BRUCE CARPER, *individually and on behalf of all others similarly situated*,

                Plaintiff,

      *v.*

TMC THE METALS COMPANY INC. f/k/a SUSTAINABLE OPPORTUNITIES ACQUISITION CORP., GERARD BARRON, and SCOTT LEONARD,

                Defendants.

**MEMORANDUM & ORDER**
21-CV-5991-EK-SJB

**BULSARA, United States Magistrate Judge:**

      Plaintiff Bruce Carper ("Carper") filed this putative securities class action ("*TMC I*") against TMC the metals company Inc. ("TMC" or the "Company"); Gerard Barron ("Barron"), TMC's Chief Executive Officer and Chairman of the Board; and Scott Leonard ("Leonard" and collectively, "Defendants"), currently a director of TMC, on October 28, 2021.  (Class Action Compl. dated Oct. 28, 2021 ("*TMC I* Compl."), Dkt. No. 1).  The Complaint alleges violations of sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Securities and Exchange Commission ("SEC") Rule 10b-5 for making materially false and misleading statements in connection with a merger "with Sustainable Opportunities Acquisition Corporation ('SOAC'), [a]

special purpose acquisition company ('SPAC')." (*TMC I* Compl. ¶¶ 1–2, 25–35).[1] The putative class is comprised of investors who purchased or otherwise acquired TMC's publicly traded securities between March 4, 2021 and October 5, 2021. (*Id.* ¶ 1).

In a separate action commenced on November 15, 2021, *Tran v. TMC the metals company Inc.* ("*TMC II*"), plaintiff Phuoc Chan Tran brought the same Exchange Act and Rule 10b-5 claims against the same Defendants on behalf of investors who acquired TMC securities during the same class period. (Class Action Compl. dated Nov. 15, 2021 ("*TMC II* Compl."), No. 21-CV-6325, Dkt. No. 1).

Pending before the Court is the unopposed motion of Point12 Diversified Fund, LP ("Point12") and Kyle Autry ("Autry") seeking (1) consolidation of the two cases, (2) their appointment as Co-Lead Plaintiffs, and (3) appointment of Pomerantz LLP ("Pomerantz") as Lead Class Counsel. (Notice of Mot. of Point12 and Autry for Consolidation, Appointment as Co-Lead Pls., and Approval of Lead Counsel dated Dec. 27, 2021, Dkt. No. 10). Four other motions for consolidation, appointment as Lead Plaintiff, and appointment of Class Counsel were filed by Tran S. Hien ("Hien"), Steven

---

[1] "A SPAC is a publicly traded company that issues shares through an initial public offering ('IPO') but conducts no business of its own; its purpose is to merge with a private company so that that company may become publicly traded. SPACs provide an alternative and faster method for private companies to become publicly traded, as compared to filing a registration statement and prospectus with the [SEC] before going public. A private company's merger with a SPAC, unlike an IPO, is not subject to the quiet period imposed by federal securities laws, and therefore the private company's executives are not limited in their ability to speak publicly about the company prior to and just after the transaction." *United States v. Milton*, No. 21 Cr. 478, 2021 WL 5304328, at *1 (S.D.N.Y. Nov. 15, 2021) (internal citations omitted).

Hong ("Hong"), Ali S. Afaneh ("Afaneh"), and the TMC Investors Group;[2] the motions were supplemented with notices of non-opposition.[3]

For the reasons stated below, the motion is granted.

## BACKGROUND

TMC collects, processes, and refines "polymetallic nodules found on the seafloor of the eastern Pacific Ocean" "to supply metals for electric vehicle batteries" while aiming to minimize negative environmental and social impact. (*TMC I* Compl. ¶¶ 3, 16; *TMC II* Compl. ¶¶ 3, 16).

On March 4, 2021, the Company announced a $2.9 billion SPAC merger between DeepGreen Inc., TMC's predecessor, and SOAC in a press release attached to SOAC's Form 8-K SEC filing from the same day. (*TMC I* Compl. ¶ 25; *TMC II* Compl. ¶ 25). SOAC filed a Form S-4 prospectus, which was declared effective on August 12, 2021. (*TMC I* Compl. ¶ 31; *TMC II* Compl. ¶ 31). On August 13, 2021, SOAC filed a proxy statement with the SEC. (*TMC I* Compl. ¶ 31; *TMC II* Compl. ¶ 31).

On September 13, 2021, *Bloomberg* reported that "two unidentified investors [failed] to provide funds" of approximately $330 million to the venture, which was

---

[2] The TMC Investors Group is comprised of individuals Christopher Matthaei and Chris Fargnoli, and Edge Harbor Limited Partnership Trust. *See* Joint Decl. of the TMC Investors Group dated Dec. 24, 2021, attached as Ex. B to Decl. of Jeffrey C. Block dated Dec. 27, 2021, Dkt. 21 at 1. The TMC Investors Group had filed a prior motion and memorandum of law on December 27, 2021, *see* Dkt. Nos. 17 and 18, but later asked the Court to disregard the earlier filings. *See* Letter dated Dec. 28, 2021, Dkt. No. 22.

[3] *See* Mot. to Consolidate by Hien dated Dec. 27, 2021, Dkt. No. 7 (withdrawn by Notice dated Jan. 10, 2022, Dkt. No. 33); Mot. to Consolidate by Hong dated Dec. 27, 2021, Dkt. No. 12 (withdrawn by Notice dated Jan. 10, 2022, Dkt. No. 29); Mot. to Consolidate by Afaneh dated Dec. 27, 2021, Dkt. No. 14 (withdrawn by Notice dated Jan. 10, 2022, Dkt. No. 30); Mot. to Consolidate by TMC Investors Group dated Dec. 27, 2021, Dkt. No. 19 (withdrawn by Notice dated Jan. 18, 2022, Dkt. No. 35).

"'embarrassing' and problematic" because the Company had estimated that it needed $7 billion for large-scale production. (*TMC I* Compl. ¶¶ 6, 36 (alteration in original); *TMC II* Compl. ¶¶ 6, 36 (alteration in original)). It further reported that several prominent companies supported a moratorium on deep-sea mining and that at least some environmentalists believed the Company's "activities will damage sensitive ecosystems and destroy vital biodiversity." (*TMC I* Compl. ¶ 37; *TMC II* Compl. ¶ 37). In the two days after the article was published, the Company's shares fell more than 20%, closing at $10.00 on September 15, 2021. (*TMC I* Compl. ¶¶ 7, 38; *TMC II* Compl. ¶¶ 7, 38).

Both Complaints allege that Defendants failed to disclose five adverse and material facts, which inflated the Company's valuation to investors, and that the above statements in SEC filings were "materially false and/or misleading at all relevant times." (*TMC I* Compl. ¶ 35; *TMC II* Compl. ¶ 35). These alleged omissions were that the Company had (1) overpaid for a key acquisition; (2) inflated the exploration expenditures of a wholly owned subsidiary to give a false impression about the Company's operations; (3) falsely asserted 100% ownership in the subsidiary; (4) downplayed the environmental risks of deep-sea mining; and (5) failed to disclose the true state of its investor funding. (*TMC I* Compl. ¶ 35; *TMC II* Compl. ¶ 35). These omissions were in a Form 8-K and press release filed on March 4, 2021; an interview with Barron; the prospectus; and proxy materials. (*TMC I* Compl. ¶¶ 25–35; *TMC II* Compl. ¶¶ 25–35).

Both Complaints contain two causes of action, both of which are against all Defendants: (1) a violation of section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5, (*TMC I* Compl. ¶¶ 54–63; *TMC II* Compl. ¶¶ 54–

63) (Count I), and (2) a violation of section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), (*TMC I* Compl. ¶¶ 64–69; *TMC II* Compl. ¶¶ 64–69) (Count II).

## DISCUSSION

I.  Consolidation of Cases

"Consolidation is 'a valuable and important tool of judicial administration' that should be 'invoked to expedite trial and eliminate unnecessary repetition and confusion.'" *Reitan v. China Mobile Games & Ent. Grp., Ltd.*, 68 F. Supp. 3d 390, 394 (S.D.N.Y. 2014) (quoting *Devlin v. Transp. Commc'ns Int'l Union*, 175 F.3d 121, 130 (2d Cir. 1999)). Under Federal Rule of Civil Procedure 42, a court may consolidate multiple actions that "involve a common question of law or fact." Fed. R. Civ. P. 42(a)(2). Absent prejudice to the defendants, "[c]onsolidation of multiple actions alleging securities fraud is appropriate where those actions relate to the same public statements and reports," *Constance Sczesny Tr. v. KPMG LLP*, 223 F.R.D. 319, 322 (S.D.N.Y. 2004) (quotations omitted), and "the actions need not be identical to allow for consolidation," *Reitan*, 68 F. Supp. 3d at 394; *Pinkowitz v. Elan Corp.*, No. 02-CV-4948, 2002 WL 1822118, at *3 (S.D.N.Y. July 29, 2002) ("Neither Rule 42 nor the [Private Securities Litigation Reform Act ("PSLRA")] demands that actions be identical before they may be consolidated."). In fact, "[d]ifferences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation." *Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007) (entering consolidation order despite different class periods). Such "consolidation of stockholders' suits often benefits both the courts and the parties by expediting pretrial proceedings, avoiding duplication of discovery, and minimizing

costs." *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 293–94 (E.D.N.Y. 1998) (consolidating cases with different, but overlapping, class periods).

Both *TMC I* and *TMC II* allege violations of sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 by TMC, Barron, and Leonard. (*TMC I* Compl. ¶¶ 1, 54–69; *TMC II* Compl. ¶¶ 1, 54–69). The allegations are based on the same underlying facts; in fact, the Complaints are nearly identical. And the respective class periods of March 4, 2021 to October 5, 2021 are the same. (*TMC I* Compl. ¶ 1; *TMC II* Compl. ¶ 1). Therefore, case consolidation is appropriate. *Chitturi v. Kingold Jewelry, Inc.*, No. 20-CV-2886, 2020 WL 8225336, at *3 (E.D.N.Y. Dec. 22, 2020); *Schulman v. Lumenis, Ltd.*, No. 02-CV-1989, 2003 WL 21415287, at *1–*2 (S.D.N.Y. June 18, 2003) (consolidating cases with complaints "arising out of the same facts and alleging similar, if not identical, claims" and finding "[s]ince every Complaint in the Lumenis Actions is premised on the same facts and statutory provisions, consolidation is appropriate").

II. <u>Co-Lead Plaintiffs</u>

"In consolidated securities litigations, the PSLRA recommends courts to make the decision regarding the appointment of the 'most adequate' plaintiff as the lead plaintiff for the consolidated actions '[a]s soon as practicable after [the consolidation] decision is rendered.'" *Constance Sczesny Tr.*, 223 F.R.D. at 322 (alterations in original) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(ii)).

A. <u>Notice to Class</u>

The PSLRA requires that a plaintiff who files a complaint publish, in a widely circulated business oriented publication or wire service, a notice advising members of the purported class of "the pendency of the action, the claims asserted therein, and the purported class period"; and provides that "not later than 60 days after the date on

6

which the notice is published, any member of the purported class may move the court to serve as lead plaintiff[.]" 15 U.S.C. § 78u-4(a)(3)(A)(i).  Although no party has objected to the adequacy of the notice here, "in deciding a motion for the appointment of lead plaintiff under the PSLRA, courts have an independent duty to scrutinize the published notice and ensure that the notice comports with the objectives of the PSLRA." *Teamsters Loc. 445 Freight Div. Pension Fund v. Bombardier Inc.*, No. 05-CV-1898, 2005 WL 1322721, at *2 (S.D.N.Y. June 1, 2005).

On October 28, 2021—the same day the Complaint was filed—Rosen Law Firm, counsel for Carper and Hong, caused a notice of the action to be filed on *Business Wire*, containing relevant information about *TMC I*.  (*See Business Wire* Notice dated Oct. 28, 2021, attached as Ex. B to Decl. of Jeremy A. Lieberman in Supp. dated Dec. 27, 2021 ("Lieberman Decl."), Dkt. No. 11-1 at 1).  The class period was defined and potential class members were instructed on how to join the action and the deadline by which to file a motion for appointment as Lead Plaintiff, December 27, 2021.  (*Id.*).  "*Business Wire* is a suitable vehicle for meeting the statutory requirement that notice be published[.]" *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 403 (S.D.N.Y. 2004); *see also Rauch v. Vale S.A.*, 378 F. Supp. 3d 198, 206–07 (E.D.N.Y. 2019); *Atanasio v. Tenaris S.A.*, 331 F.R.D. 21, 26 (E.D.N.Y. 2019).

Point12 and Autry's motion was filed on December 27, 2021, within the period provided by the notice, and therefore is timely.  *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II); *In re Hebron Tech. Co., Ltd. Sec. Litig.*, No. 20-CV-4420, 2020 WL 5548856, at *4, 4 n.3 (S.D.N.Y. Sept. 16, 2020).

B.  <u>Appointment of Co-Lead Plaintiffs</u>

The PSLRA requires the Court to appoint as "Lead Plaintiff" the member of the putative class that the Court determines to be "most adequate plaintiff," *i.e.*, the member the court determines to be "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). The Court must "adopt a presumption that the most adequate plaintiff . . . is the person or group of persons" that:

(1) "has either filed the complaint or made a [timely] motion" to be appointed as lead plaintiff(s);

(2) "in the determination of the court, has the largest financial interest in the relief sought by the class"; and

(3) "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure."

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). This presumption may be rebutted "only" by proof that the presumptively adequate plaintiff either "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Even when a motion to appoint a lead plaintiff is unopposed, the Court must still consider the factors under the PSLRA to ensure that the movant is the most adequate plaintiff. *See Springer v. Code Rebel Corp.*, No. 16-CV-3492, 2017 WL 838197, at *1. (S.D.N.Y. Mar. 2, 2017) ("Though [the] motion is now unopposed, the Court nevertheless addresses the requirements under the [PSLRA] for appointment of lead plaintiffs[.]"); *e.g.*, *City of Warren Police & Fire Ret. Sys. v. Foot Locker, Inc.*, 325 F. Supp. 3d 310, 314 (E.D.N.Y. 2018); *In re Symbol Techs., Inc. Sec. Litig.*, No. 05-CV-3923, 2006 WL 1120619, at *2 (E.D.N.Y. Apr. 26, 2006).

As noted, Point 12 and Autry made a timely motion to be appointed Co-Lead Plaintiffs. The Court therefore turns to the two remaining presumption elements. *See City of Warren*, 325 F. Supp. 3d at 315.

### 1. Largest Financial Interest

In assessing the financial interests of parties seeking lead plaintiff status, the Court will generally consider:

(1) the total number of shares purchased during the class period;

(2) the net shares purchased during the class period (in other words, the difference between the number of shares purchased and the number of shares sold during the class period);

(3) the net funds expended during the class period (in other words, the difference between the amount spent to purchase shares and the amount received for the sale of shares during the class period); and

(4) the approximate losses suffered.

*In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 112 (E.D.N.Y. 2012) (referring to these factors as the "*Olsten* factors" and citing *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d at 295). The fourth factor, the approximate losses suffered, is considered to be the most important. *See Atanasio*, 331 F.R.D. at 26; *Baughman v. Pall Corp.*, 250 F.R.D. 121, 125 (E.D.N.Y. 2008); *see also Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 530 (S.D.N.Y. 2015).

Under these criteria, Point12 and Autry have the largest demonstrated financial interest. Point12 purportedly suffered $142,487 in losses, having purchased 31,000 total shares, 31,000 net shares, and expending $241,400 on TMC during the class period. (*See* Loss Chart, attached as Ex. A to Lieberman Decl. at 1). Autry purportedly suffered $55,883 in net losses, having purchased 32,100 shares of common stock, 23,844 net shares of common stock, and expending $190,398 on TMC during the class

period. (*Id.* at 1–2; *see also* Mem. of Law in Supp. dated Dec. 27, 2021, Dkt. No. 11 at 7). Hien, Hong, and Afaneh, in their notices of non-opposition, recognized that they do not have the largest financial interest in the litigation. The TMC Investors Group, whose notice of non-opposition did not mention any movant's financial interest, has not contested Point12 and Autry's calculations.

Thus, under the *Olsten* criteria, Point12 and Autry have the largest financial interest. *See, e.g.*, *Chitturi*, 2020 WL 8225336, at \*5 (finding plaintiff in securities class action had largest financial interest where all other plaintiffs who had moved for appointment as lead plaintiff withdrew or filed notice of non-opposition); *Springer*, 2017 WL 838197, at \*1–\*2 ("Though Tran and Ybarra's motion is now unopposed, the Court nevertheless addresses the requirements under the [PLSRA.] . . . The other plaintiffs, in withdrawing their respective motions, acknowledged that their financial interest was not as great.") (citations omitted).

    2.    <u>Rule 23</u>

The next step in identifying which plaintiff is entitled to the presumption is to determine whether a movant "otherwise satisfies the requirements of Rule 23[.]" *Salinger v. Sarepta Therapeutics, Inc.*, No. 19-CV-8122, 2019 WL 6873807, at \*3 (S.D.N.Y. Dec. 17, 2019) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc)). In a PSLRA motion to appoint lead plaintiff, the Court considers only whether the proposed plaintiff has made a "preliminary showing" that two Rule 23 requirements—typicality and adequacy—are satisfied. *See Ford v. Voxx Int'l Corp.*, No. 14-CV-4183, 2015 WL 4393798, at \*3 (E.D.N.Y. July 16, 2015) (adopting report and recommendation) (collecting cases); *see also Atanasio*, 331 F.R.D. at 29–30; *Martingano v. Am. Int'l Grp., Inc.*, No. 06-CV-1625, 2006 WL 1912724, at \*4 (E.D.N.Y. July 11, 2006) ("[A]t this stage

in the litigation, one need only make a preliminary showing that the Rule's typicality and adequacy requirements have been satisfied.") (quotations and citations omitted).

"Typicality is satisfied where the claims arise from the same course of events and each class member makes similar legal arguments to prove defendant's liability." *In re Symbol Techs.*, 2006 WL 1120619, at \*3 (citing *Robinson v. Metro-N. Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001)). The claims here are all based on the alleged omissions in the March 4, 2021 Form 8-K and press release, an interview with Barron, the prospectus, and proxy materials related to the SPAC merger. And all class members are alleged to have relied on these omissions. (*TMC I* Compl. ¶ 60; *TMC II* Compl. ¶ 60). Point12 and Autry's claims are therefore typical of those of all of the other class members. *E.g.*, *Dixon v. Bemis Co., Inc.*, No. 19 Civ. 3356, 2020 WL 7212082, at \*3 (S.D.N.Y. Mar. 10, 2020) ("Dixon contends that 'Defendants are alleged to have solicited all Bemis' shareholders' votes with the same materially incomplete and misleading Proxy Statement that caused Movant's injuries.' This Court is satisfied that . . . Dixon has made the preliminary showing required for typicality[.]") (internal citations omitted); *In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 258 F.R.D. 260, 269 (S.D.N.Y. 2009) ("Like other putative members of the class, the Public Pension Funds were entitled to vote on the merger between BofA and Merrill Lynch, and they had purchased or otherwise acquired BofA securities at prices allegedly inflated by defendants' materially false and misleading statements and/or omissions [in a Joint Proxy statement]. As a result their claims are typical[.]").

"The adequacy requirement is satisfied where '(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) the class members' interests are not antagonistic to one another; and (3) the class has a sufficient interest in

the outcome of the case to ensure vigorous advocacy.'" *In re Symbol Techs.*, 2006 WL 1120619, at *3 (quoting *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 102 (S.D.N.Y. 2005)); *Atanasio*, 331 F.R.D. at 29; *City of Warren*, 325 F. Supp. 3d at 316.

Point12 and Autry are represented by Pomerantz, a firm that has litigated class actions in the past; the Court concludes the firm would generally be able to conduct this litigation. *See* Pomerantz LLP Resume, attached as Ex. E to Lieberman Decl. at 2–12; *e.g.*, *Darish v. N. Dynasty Mins. Ltd.*, No. 20-cv-5917, 2021 WL 1026567, at *7 (E.D.N.Y. Mar. 17, 2021) (appointing Pomerantz as class counsel); *Xiangdong Chen v. X Fin.*, No. 19-CV-6908, 2020 WL 2478643, at *5 (E.D.N.Y. May 13, 2020) (same).

Nothing about Point12 and Autry's interests appears to be antagonistic to the interests of the other putative class members; "this appears to be a fairly common class action based on alleged violations of the Exchange Act where class members are relying on the same statements or omissions as the factual basis of their claims, and where the financial losses are tied to the drop in value that occurred" are all based in part on shareholders' reliance on the same allegedly misleading disclosures. *E.g.*, *In re Sequans Commc'ns S.A. Sec. Litig.*, 289 F.Supp.3d 416, 423 (E.D.N.Y. 2018); *see also In re Bank of Am. Corp. Sec.*, 258 F.R.D. 260, 270 (S.D.N.Y. 2009) (finding that in an action based on an allegedly misleading proxy statement, "[t]he Public Pension Funds also satisfy the adequacy requirement, as they have the greatest financial interest in the outcome of the case, their interests appear to be otherwise aligned with those of the putative class, and they have retained competent and experienced counsel."). Finally, as noted earlier, Point12 and Autry have suffered combined alleged losses of slightly more than $198,000 and thus have a sufficient financial interest in the case's outcome to suggest they will pursue the case with vigor.

Additionally, the PLSRA permits a "person or group of persons" to be appointed lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The majority of courts permit unrelated investors to join together as a group, and decide a motion to do so on a case-by-case basis, evaluating whether the grouping best serves the interest of the class. *Accord Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008). In making such a determination, Courts have examined: "(i) the size of the [group]; (ii) any evidence that the group was formed in bad faith; and (iii) the relationship between the parties." *Barnet v. Elan Corp.*, 236 F.R.D. 158, 162 (S.D.N.Y. 2005) (internal citations omitted). Here, Point12 and Autry may be appointed as Co-Lead Plaintiffs.

With respect to the first factor, size, courts in this Circuit have frequently approved the appointment of two co-lead plaintiffs. *E.g.*, *Lavin v. Virgin Galactic Holdings, Inc.*, No. 21-CV-3070, 2021 WL 5409798, at *4–*5 (E.D.N.Y. Sept. 17, 2021) (granting motion to appoint two co-lead plaintiffs); *In re Sequans Commc'ns*, 289 F. Supp. 3d at 426 (same). As for the second factor, there is no indication that the group here was formed in bad faith. Finally, while Point12 and Autry are unrelated, it is not the case that there must be some pre-existing, pre-litigation relationship between potential co-leads. *Lavin*, 2021 WL 5409798, at *4 ("It is not necessary that proposed lead plaintiffs have a pre-litigation relationship[.]") (quoting *Howard Gunty Profit Sharing Plan v. CareMatrix Corp.*, 354 F. Supp. 2d 18, 24 (D. Mass. 2000)). Nothing in the PSLRA requires such a relationship for groups or class members jointly appointed. Courts routinely appoint unrelated class members as co-lead plaintiffs. *See In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. at 99, 99 n.18 (collecting cases) (noting that majority view is that unrelated investors may join forces if other requirements of adequacy were

13

satisfied). Point12 and Autry have submitted a Joint Declaration that states they have each other's contact information; approved the selection of Pomerantz as Lead Class Counsel; hold a "shared interest in prosecuting the case in a collaborative and likeminded manner"; and will be "conferring with each other and with our counsel regarding litigation strategy[,]" attending both proceedings both in and out of court, "and reviewing and authorizing" filings. (Joint Decl. in Supp. of Lead Pl. Mot. dated Dec. 27, 2021, attached as Ex. D to Lieberman Decl. ¶¶ 4–13).

Consequently, the Court concludes that Point12 and Autry have satisfied the Rule 23 typicality and adequacy requirements, and with the largest financial loss, are entitled to a presumption that they are the most adequate plaintiffs. And the Court concludes that all relevant factors weigh in favor of a co-lead plaintiff relationship.

### 3. Rebuttal of Presumption of Adequacy

The presumption that Point12 and Autry should be appointed Co-Lead Plaintiffs "may be rebutted only upon proof" that they "will not fairly and adequately protect the interests of the class" or are "subject to unique defenses that render [them] incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *accord Constance Sczesny Tr.*, 223 F.R.D. at 323. There is no suggestion that Point12 and Autry are subject to unique defenses or cannot fairly and adequately represent the class, and therefore Point12 and Autry are appointed Co-Lead Plaintiffs. *See, e.g., In re Gentiva*, 281 F.R.D. at 121 ("[B]ecause there is no indication that LACERS is subject to unique defenses or will be unable to fairly and adequately protect the interests of the class th[e] presumption is not rebutted. Therefore, the motion by LACERS to be appointed lead plaintiff is granted.") (internal citations omitted).

14

III.       Lead Class Counsel

Under the PSLRA, "[t]he most adequate plaintiff[s] shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v) (second alteration added); *see Vale S.A.*, 378 F. Supp. 3d at 211; *In re Sequans Commc'ns*, 289 F.Supp.3d at 426. "The Court generally defers to the plaintiff[s'] choice of counsel, and will only reject the plaintiff[s'] choice . . . if necessary to protect the interests of the class." *Bray v. Frontier Commc'ns Corp.*, No. 17-CV-1617, 2018 WL 525485, at *11 (D. Conn. Jan. 18, 2018) (alterations added) (quotations omitted); *see Kuriakose v. Fed. Home Loan Mortg. Co.*, No. 08-CV-7281, 2008 WL 4974839, at *9 (S.D.N.Y. Nov. 24, 2008) ("The [PSLRA] . . . evidences a strong presumption in favor of approving a properly-selected lead plaintiff[s'] decisions as to counsel selection and counsel retention.") (alterations added) (quotations omitted).

The Court sees no reason not to adhere to Point12 and Autry's choice. Pomerantz is appointed as Lead Class Counsel.

## CONCLUSION

For the reasons discussed above, the Court grants the motion. Pursuant to Rule 42(a) of the Federal Rules of Civil Procedure, *Carper v. TMC the metals company Inc.*, case No. 21-CV-5991, and *Tran v. TMC the metals company Inc.*, case No. 21-CV-6325, are hereby consolidated as *In re TMC the metals company Inc. Securities Litigation*. All relevant documents and submissions shall be maintained as one file under Master File No. 21-CV-5991. Any other securities class actions filed in, or transferred to, this District related to the facts alleged in the cases described above shall be consolidated into this action.

15

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B), the Court appoints Point12 Diversified Fund, LP and Kyle Autry as Co-Lead Plaintiffs and Pomerantz LLP as Lead Class Counsel. The other motions are denied as moot.

SO ORDERED.

<u>/s/ *Sanket J. Bulsara*  3/7/2022</u>
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York