**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

IN RE TMC THE METALS COMPANY INC.
SECURITIES LITIGATION

Master File No. 21-CV-5991-EK-SJB

**REPLY BRIEF IN FURTHER SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS THE AMENDED COMPLAINT**

LATHAM & WATKINS LLP
Jeff G. Hammel
1271 Avenue of the Americas
New York, NY 10020
Tel: (212) 906-1200
Fax: (212) 751-4864
Email: jeff.hammel@lw.com

Colleen C. Smith (*pro hac vice*)
12670 High Bluff Drive
San Diego, California 92130
Tel: (858) 523-5400
Fax: (858) 523-5450
Email: colleen.smith@lw.com

Kristin N. Murphy *(pro hac vice)*
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Tel: (714) 540-1235
Fax: (714) 755-8290
Email: kristin.murphy@lw.com

*Attorneys for Defendants TMC the metals
company, Inc. (f/k/a Sustainable
Opportunities Acquisition Corp.), Gerard
Barron, and Scott Leonard*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...........................................................................................1

ARGUMENT ....................................................................................................................2

I.      PLAINTIFFS LACK STANDING TO CHALLENGE STATEMENTS 2-6 ....................2

II.     PLAINTIFFS FAIL TO PLEAD A FALSE OR MISLEADING STATEMENT ..............3

        A.      Plaintiffs Have Not Pled Falsity for the PIPE Financing Statements .....................3

        B.      Plaintiffs Have Not Pled Falsity for the Environmental Impact Statements ...........4

        C.      Plaintiffs Have Not Pled Falsity for the TOML Statements ..................................5

        D.      Plaintiffs Have Not Pled Falsity for the NORI Statement ....................................6

III.    PLAINTIFFS FAIL TO PLEAD A "STRONG INFERENCE" OF SCIENTER ...............7

        A.      Plaintiffs Fail to Allege Any Motive or Opportunity ...............................................7

        B.      Plaintiffs Fail to Allege That Defendants Had Contradictory Information .............8

        C.      Signing TMC's SEC Filings Does Not Establish Scienter .....................................8

        D.      Plaintiffs Do Not Plead a "Core Operations" Theory ...............................................9

IV.     PLAINTIFFS FAIL TO PLEAD LOSS CAUSATION .....................................................10

CONCLUSION ..................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007)............................................................................................8

*In re Avon Sec. Litig.*,
2019 WL 6115349 (S.D.N.Y. Nov. 18, 2019)...............................................................9

*In re Bristol-Myers Squibb Sec. Litig.*,
312 F. Supp. 2d 549 (S.D.N.Y. 2004)...........................................................................8

*Das v. Rio Tinto PLC*,
332 F. Supp. 3d 786 (S.D.N.Y. 2018)...........................................................................9

*DiMuro v. Clinique Laboratories, LLC*,
572 F. App'x 27 (2d Cir. 2014) ....................................................................................3

*Fait v. Regions Financial Corp.*,
655 F.3d 105 (2d Cir. 2011)..........................................................................................6

*Francisco v. Abengoa, S.A.*,
481 F. Supp. 3d 179 (S.D.N.Y. 2020)...........................................................................2

*Freudenberg v. E\*Trade Fin. Corp.*,
712 F. Supp. 2d 171 (S.D.N.Y. 2010)...........................................................................4

*Herrera-Amador v. New York City Police Dep't*,
2021 WL 3012583, slip op. (E.D.N.Y. July 16, 2021) .......................................6, 7, 10

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
693 F.3d 145 (2d Cir. 2012)......................................................................................2, 3

*Nicholas v. Poughkeepsie Savings Bank/FSB*,
1990 WL 145154 (S.D.N.Y. Sept. 27, 1990)................................................................3

*Novak v. Kasaks*,
216 F.3d 300 (2d Cir. 2000)..........................................................................................9

*Omnicare Inc. v. Laborers District Council Construction Industry Pension Fund*,
575 U.S. 175 (2015).......................................................................................................6

*In re Omnicom Grp., Inc. Sec. Litig.*,
597 F.3d 501 (2d Cir. 2010)........................................................................................10

*Ontario Teachers' Pension Plan Bd. v. Teva Pharm. Indus. Ltd.*,
  2020 WL 1181366 (D. Conn. Mar. 10, 2020) ........................................................................2

*Perrone v. Amato*,
  2010 WL 11629624 (E.D.N.Y. Aug. 30, 2010).....................................................................7

*Reilly v. U.S. Physical Therapy, Inc.*,
  2018 WL 3559089 (S.D.N.Y. July 23, 2018) ........................................................................9

*Shanawaz v. Intellipharmaceutics Int'l. Inc.*,
  348 F. Supp. 3d 313 (S.D.N.Y. 2018)...................................................................................7

*South Cherry St., LLC v. Hennessee Grp. LLC*,
  573 F.3d 98 (2d Cir. 2009)....................................................................................................7

*In re Symbol Techs., Inc. Sec. Litig.*,
  2013 WL 6330665 (E.D.N.Y. Dec. 5, 2013) .........................................................................8

*Teamsters Loc. 445 Freight Div. Pension Fund v. Dynex Cap. Inc.*,
  531 F.3d 190 (2d Cir. 2008)..................................................................................................9

*Turner v. MagicJack VocalTec, Ltd.*,
  2014 WL 406917 (S.D.N.Y. Feb. 3, 2014)............................................................................6

*In re Vivendi Universal SA, Sec. Litig.*,
  242 F.R.D. 76 (S.D.N.Y. 2007) ............................................................................................2

*Yannes v. SCWorx Corp.*,
  2021 WL 2555437 (S.D.N.Y. June 21, 2021) .......................................................................4

**STATUTES**

15 U.S.C. § 78u-5(c)(1)(A)(i) ....................................................................................................4

## PRELIMINARY STATEMENT

Plaintiffs' opposition brief underscores the reasons why the Complaint—which largely parrots a short-seller report—should be dismissed.

**First**, Plaintiffs concede that they purchased TMC shares *after* two of the original alleged corrective disclosures, so they lack standing as a matter of law to challenge five of the alleged misstatements in the Complaint.  Plaintiffs cite no case finding standing where, as here, Plaintiffs purchased *after* corrective disclosures.  Nor does Plaintiffs' secondary argument—that they were injured by "inter-related misstatements and omissions"—save their claim, as the statements for which they do have standing are entirely distinct from the five statements they cannot pursue.

**Second**, Plaintiffs fail to plead the facts required by the PSLRA to establish a false statement.  Plaintiffs do not identify *any* contemporaneous facts that contradict Defendants' statements, and they ignore black-letter law establishing that certain of those statements are non-actionable opinions or forward-looking statements.  Plaintiffs also abandon an entire category of statements relating to TMC's calculation of its NORI expenditures.

**Third**, Plaintiffs fail to plead *any* inference—much less the required "strong" inference—of scienter.  Plaintiffs concede that neither Individual Defendant sold any stock during the class period, which undermines scienter as a matter of law.  And Plaintiffs allege no facts suggesting that Defendants intentionally or recklessly made any false statements.

**Fourth**, Plaintiffs fail to plead loss causation.  Plaintiffs have abandoned one of the corrective disclosures alleged in the Complaint (the filing of the PIPE lawsuits), and they do not explain how the remaining two provided any information that was new and not previously disclosed or corrective of any of the challenged statements.

This case is a knee-jerk reaction to a short-seller report.  It should be dismissed.

1

## ARGUMENT

### I.   PLAINTIFFS LACK STANDING TO CHALLENGE STATEMENTS 2-6

Plaintiffs lack standing to pursue claims based on Statements 2 through 6 because Plaintiffs did not buy any TMC shares until *after* those statements were allegedly corrected.  Mot. at 8-9.[1] Plaintiffs try to sidestep Defendants' argument, responding that the timing of their stock purchases is irrelevant to standing because all of the alleged misrepresentations implicate "the same set of concerns" and are part of the same "generalized course of conduct."  Pls.' Resp. in Opp'n ("Opp.") at 10-11.  But in all of their cited cases, the lead plaintiff had purchased stock purportedly in reliance on the alleged false statements *before* the previously unknown (and purportedly omitted) information was disclosed.  *Id.* at 9-10 (citing *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 150 (2d Cir. 2012) (NECA purchased before the disclosures); *Ontario Teachers' Pension Plan Bd. v. Teva Pharm. Indus. Ltd.*, 2020 WL 1181366, at *13 (D. Conn. Mar. 10, 2020) (plaintiff purchased before the disclosures and the claims "rely on many of the same alleged misrepresentations")); *In re Vivendi Universal SA, Sec. Litig.*, 242 F.R.D. 76, 87 (S.D.N.Y. 2007) (plaintiff purchased before the disclosures and the losses resulted from one "sustained course of conduct").  Neither Plaintiff bought TMC stock until *after* the information purportedly omitted from Statements 2-6 was made public (Mot. at 8; Am. Class Action Compl. ("AC") ¶¶ 98-109, ECF No. 43), so Plaintiffs could not have been misled, could not have detrimentally relied, and have no standing or damages.  *See* Mot. at 8-9; *Francisco v. Abengoa, S.A.*, 481 F. Supp. 3d 179, 206-07 (S.D.N.Y. 2020) (no standing for purchases after the alleged disclosures).

Contrary to Plaintiffs' assertion, the challenged statements do not resemble the "nearly identical misrepresentations" in *NECA*, 693 F.3d at 162 (cited in Opp. at 9-11), or the "inter-related

---

[1] References to "Statement __" are to the statements listed in Appendix A to the Memorandum in Support of Defendants' Motion to Dismiss ("Motion" or "Mot.").

misstatements and omissions" in *Nicholas v. Poughkeepsie Savings Bank/FSB*, 1990 WL 145154, at *5 (S.D.N.Y. Sept. 27, 1990) (cited in Opp. at 9-10).  Here, Plaintiffs challenge discrete buckets of statements that are distinct from one another.  Statements 2-6 (for which Plaintiffs lack standing) concern TMC's green credentials (AC ¶¶ 86-87, 91) and the terms of the PIPE financing (*id.* ¶¶ 85, 89), while the remaining challenged statements pertain to litigation (*id.* ¶¶ 103-104) and the NORI and TOML exploration contracts (*id.* ¶¶ 93, 95-96).  Proving liability for each group of statements hinges on different facts.  In such situations, the Second Circuit consistently holds that standing does not exist and affirms dismissal of class claims at the pleading stage.  *See, e.g.*, *DiMuro v. Clinique Laboratories, LLC*, 572 F. App'x 27, 29 (2d Cir. 2014) (affirming dismissal for lack of standing where "unique evidence" was needed to prove falsity of statements).

## II.    PLAINTIFFS FAIL TO PLEAD A FALSE OR MISLEADING STATEMENT

### A.    Plaintiffs Have Not Pled Falsity for the PIPE Financing Statements

Plaintiffs rely entirely on impermissible hindsight to try to plead falsity for the two pre-merger PIPE financing statements (Statements 2 and 5).  Plaintiffs admit that these statements are alleged to be false based on what "subsequent events" supposedly "confirmed."  Opp. at 14.  Hindsight, of course, fails to state a claim.  Mot. at 10-11 (citing cases).  The commentary from Mr. Barron at a conference more than five months after the challenged statements, on which Plaintiffs rely, does not suggest that TMC knew the PIPE investors might default before closing.  To the contrary, those investors promised that they would have sufficient funds to honor their "irrevocabl[e]" funding commitments in the subscription agreements with TMC.  *See id*. at 11 n.3.

Plaintiffs' allusion to what Mr. Barron did *not* say during this conference (*i.e.*, provide a reason for the default that was *unknown* before it happened) (Opp. at 8), is an improper attempt to turn the pleading standard upside down—it is Plaintiffs' job to plead facts, not speculate about their absence.  Both cases Plaintiffs cite for their argument are inapposite.  *Id*. at 14 (citing

3

*Freudenberg v. E*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 191-92 (S.D.N.Y. 2010) (alleging that "loans were internally known to be of poor quality[] . . . and highly risky" to show falsity of statements about quality of mortgage-backed securities); *Yannes v. SCWorx Corp.*, 2021 WL 2555437, slip. op. at *7 (S.D.N.Y. June 21, 2021) (alleging that "publicly accessible information" contradicting the defendants' statements "was available to [them] prior to [the alleged] . . . misrepresentations and omissions")).

As for the statement made after TMC sued the defaulting PIPE investors, Statement 11, Plaintiffs ignore that TMC filed state court actions *the very same day* the federal lawsuits were (voluntarily) dismissed. *See* Mot. at 11. That Mr. Barron described these ongoing lawsuits as one action instead of two does not render his statement false or misleading. AC ¶ 104; *see* Opp. at 15.[2]

**B.    Plaintiffs Have Not Pled Falsity for the Environmental Impact Statements**

Plaintiffs hardly address Defendants' arguments regarding the three environmental impact statements (Statements 3, 4, and 6), including Defendants' arguments that the Complaint lacks particularized facts inconsistent with these statements, that the allegedly omitted environmental risk *was disclosed*, and that two of the three environmental statements were inactionable opinions. *Compare* Mot. at 11-12, *with* Opp. at 15-16. Instead, they merely critique the sufficiency of TMC's risk disclosures without bothering to address what those disclosures actually say. Opp. at 16. TMC warned of the precise risks Plaintiffs claim were concealed, cautioning investors that seafloor mining's environmental impact was "significant[ly] uncertain[]," and that TMC's mining efforts could cause "environmental damage" or disrupt "biodiversity" and "impacted ecosystems."

---

[2] Plaintiffs' argument that Statement 10, which described TMC's expectations for 2022 and 2023, is not protected by the PSLRA's safe harbor for forward-looking statements fails for this same reason. Opp. at 15 n.7. Statement 10 was also forward-looking and accompanied by cautionary language (Mot. at 18), which triggers safe-harbor protection even if Defendants knew it was false (15 U.S.C. § 78u-5(c)(1)(A)(i)). And Plaintiffs do not allege facts showing that Defendants knew in September 2021 that TMC's funding for operations in 2023 was "precarious." Opp. at 15 n.7.

*See* Mot. at 12 (citing Ex. 2 at 54 and Ex. 3 at 50); *see also id.* (citing cases dismissing where disclosures warned of the allegedly omitted risk).[3]  Plaintiffs say these disclosures were "vague" and missing "hard facts," but they fail to plead any contradictory facts.  Opp. at 15.  Plaintiffs' assertion that the *Bloomberg* opinion (Ex. 4) "upended" these statements (Opp. at 15) is not a substitute.  *Bloomberg* merely referenced differing viewpoints on "the **potential** environmental impacts" of seafloor mining (Ex. 4 at 5 (emphasis added)); it did not contradict TMC's predictions about its future environmental impact.  AC ¶¶ 86, 87, 91.  Because the Complaint fails to allege particularized inconsistent facts, dismissal is appropriate.  *See* Mot. at 12 (citing cases).

Plaintiffs also assert that "even if some misstatements about environmental impact were opinion" (Opp. at 15-16), those statements contain "embedded facts that were untrue[]" and "omit[ ] material adverse information."  *Id.* at 16.  Even if this were a correct statement of the law regarding opinion statements (which it is not) (Mot. at 13-14), Plaintiffs' argument should be rejected because they do not say what "embedded" facts were purportedly false or what "material adverse information" was supposedly omitted.

### C.      Plaintiffs Have Not Pled Falsity for the TOML Statements

Plaintiffs' Opposition likewise confirms that Defendants' opinion statements regarding the valuation of the TOML assets (Statements 7 and 8) are inactionable.  *See* Mot. at 14-15.  Plaintiffs assert that "*objective measures* . . . known to Defendants" demonstrate falsity.  Opp. at 16.  But none of the alleged "measures" Plaintiffs cite establishes that these accounting judgments were objectively or subjectively false when made, as is required under *Omnicare Inc. v. Laborers*

---

[3] Plaintiffs concede that Exhibits 1-6 and 9 are incorporated by reference into the Complaint, but object to judicial notice of Exhibits 7, 8, and 10-13.  Opp. at 12.  Defendants' references to these documents are consistent with Second Circuit case law on judicial notice, as Defendants showed in their Request for Judicial Notice ("RJN").  Defendants cited many cases (which Plaintiffs ignore), judicially noticing similar documents for the same purposes.  RJN at 4-7.  Of course, the Court can dismiss the Complaint without relying on these documents, as it fails on its face to plead falsity, scienter, or loss causation.

*District Council Construction Industry Pension Fund*, 575 U.S. 175, 185-86 (2015). At best, Plaintiffs allege that TMC's valuations were different from past TOML valuations and valuations given to other CCZ contracts. AC ¶¶ 43-44, 49-52. But Plaintiffs fail to plead that these differences resulted from material inaccuracies in TMC's estimates. And Plaintiffs do not dispute that Defendants legitimately believed in the independently audited (and never restated) valuations. Mot. at 5, 16; *see Turner v. MagicJack VocalTec, Ltd.*, 2014 WL 406917, at *9 (S.D.N.Y. Feb. 3, 2014). Plaintiffs offer only boilerplate allegations and fact-free speculation from the Bonitas Report. AC ¶¶ 46-47, 55, 88, 97, 113; *see also id.* ¶¶ 27, 131-132. This is not enough to avoid dismissal. *See Omnicare*, 575 U.S. at 194 (plaintiffs must "identify particular (and material) facts going to the basis for the issuer's opinion").[4]

The lone case Plaintiffs cite (Opp. at 16) exposes the deficiencies in their pleading. In *Fait v. Regions Financial Corp.*, the court found that the plaintiff "ha[d] not adequately alleged actionable misstatements or omissions" because he did not "support the contention that defendants should have reached different conclusions about" their accounting judgments, and failed to "plausibly allege that the defendants did not believe" those judgments. 655 F.3d 105, 112 (2d Cir. 2011). The same is true of Plaintiffs' allegations.

### D.    Plaintiffs Have Not Pled Falsity for the NORI Statement

Plaintiffs do not respond to Defendants' argument that the Complaint lacks particularized facts showing the challenged NORI statement (Statement 9) was false, or to the argument that this is an unchallenged (and thus inactionable) accounting judgment. *Compare* Mot. at 16-18, *with* Opp. at 16 n.8. This concession warrants dismissal of Plaintiffs' claim that TMC "artificially

---

[4] Plaintiffs do not address—and therefore concede—Defendants' related valuation arguments regarding Statement 1. *Compare* Mot. at 16 n.6, *with* Opp. at 16 & n.8; *Herrera-Amador v. New York City Police Dep't*, 2021 WL 3012583, at *18 (E.D.N.Y. July 16, 2021) ("[A] party 'concedes through silence' arguments by its opponent that it fails to address.") (collecting cases).

6

inflated" (AC ¶¶ 96-97) its NORI expenditures. *Herrera-Amador*, 2021 WL 3012583, at *18. Defendants also explained that the difference in the expenditures reported was due to the conversion from international to U.S. GAAP accounting standards. Mot. at 17. The only response Plaintiffs offer (in a footnote) cites nothing and ignores Defendants' explanation. Opp. at 16 n.8.

### III.    PLAINTIFFS FAIL TO PLEAD A "STRONG INFERENCE" OF SCIENTER

#### A.    Plaintiffs Fail to Allege Any Motive or Opportunity

The sum of Plaintiffs' "motive" argument is that Defendants wanted to "downplay or hide any negative information" that might "undermine" TMC's efforts to raise capital "needed for large-scale production." Opp. at 17 (citing AC ¶¶ 99, 130-136). But a general motive to secure capital for operations is precisely the kind of universal corporate interest that courts routinely find insufficient to support scienter. *See South Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 109 (2d Cir. 2009) (goals "that are possessed by virtually all corporate insiders" do not support a strong inference of scienter) (citing cases); *see also* Mot. at 20.[5] Moreover, aside from a single paragraph reciting the general proposition that TMC would need investment capital (hardly a unique fact among early-stage companies, and one that TMC itself disclosed numerous times) (*see* AC ¶ 99), the Complaint contains no alleged facts that establish the existence of any motive "to downplay or hide" negative information (Opp. at 17 (citing AC ¶¶ 130-136)). It is axiomatic that "plaintiffs may not attempt to amend their complaints through their 12(b)(6) opposition papers." *Perrone v. Amato*, 2010 WL 11629624, at *7 (E.D.N.Y. Aug. 30, 2010).

Further undermining any inference of scienter, Plaintiffs concede that neither of the Individual Defendants sold any stock and that both actually *increased* their holdings. This

---

[5] Given the deficiency of Plaintiffs' other scienter allegations, this case is entirely distinguishable from their other cited authority. *Cf. Shanawaz v. Intellipharmaceutics Int'l. Inc.*, 348 F. Supp. 3d 313, 326 (S.D.N.Y. 2018) (complaint "paints a sufficiently plausible picture" of the defendants' motives based on specific allegations regarding their incentive packages and control over drug development, beyond the company's purported dependence on stock sales).

concession is fatal, as increasing ownership in a supposedly fraudulent enterprise is "wholly inconsistent" with scienter. *In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 561 (S.D.N.Y. 2004). Plaintiffs try to spin these purchases by claiming that they were made "before artificially inflating the stock price" (Opp. at 18 (emphasis omitted)), but what motive would the Individual Defendants have to inflate TMC stock if they never sold a single share? *See* Exs. 7, 13. This theory makes no sense and does not support an inference of scienter.

**B.      Plaintiffs Fail to Allege That Defendants Had Contradictory Information**

Plaintiffs summarily claim that the Defendants' "knowledge of and access to information directly contradicting their public statements establishes scienter." Opp. at 16-17. But Plaintiffs point to no alleged facts detailing what this purported knowledge was or how it contradicted Defendants' statements. *See, e.g.*, *id.* at 17 (vaguely referencing "work for DeepGreen and later TMC" and "due diligence"). Plaintiffs' sole citation to the Complaint on this point contains no mention of Defendants' supposed "work" for DeepGreen and TMC or any "due diligence." *See* AC ¶ 86. Such "conclusory" allegations "unsupported by factual assertions are insufficient." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007). The Complaint's lack of detail makes Plaintiffs' cited authority (Opp. at 17) inapposite. *Cf. In re Symbol Techs., Inc. Sec. Litig.*, 2013 WL 6330665, at *10 (E.D.N.Y. Dec. 5, 2013) (allegations that individual defendants were involved in generating allegedly misrepresented sales numbers sufficient to plead scienter).

**C.      Signing TMC's SEC Filings Does Not Establish Scienter**

Plaintiffs contend that the Individual Defendants' signing of TMC's SEC filings shows that they knew "the underlying facts[,]" but do not identify what those "underlying facts" were. Opp. at 17, 18 (citing AC ¶¶ 89, 93, 95). Plaintiff "cannot raise an inference of fraudulent intent based on the signing of a [SOX] certification without alleging any facts to show a concomitant awareness

8

of or recklessness to the materially misleading nature of the statements." *Das v. Rio Tinto PLC*, 332 F. Supp. 3d 786, 816 (S.D.N.Y. 2018) (quotation omitted).

>        **D.      Plaintiffs Do Not Plead a "Core Operations" Theory**

Finally, Plaintiffs attempt to invoke the "core operations" theory[6] as a substitute for specific allegations of conscious misbehavior or recklessness, arguing that because "Defendants' misleading statements and omissions plainly concern TMC's . . . most important business initiative during the Class Period"—*i.e.*, the PIPE financing—"it would be absurd to suggest that Defendants were unaware of the actual state of these operations." Opp. at 19. But the core operations theory— which is not actually pled in the AC (*see* AC ¶¶ 131-132)—requires Plaintiffs to allege more than mere access to information. Plaintiffs must also set forth *specific facts* identifying the particular inconsistent information known to management and how and when Defendants learned of it. *Teamsters Loc. 445 Freight Div. Pension Fund v. Dynex Cap. Inc.*, 531 F.3d 190, 196 (2d Cir. 2008). Plaintiffs fail to do so. *See* AC ¶¶ 11, 42, 85, 89, 98-99, 131-132. This case is nothing like *Avon*, where defendants allegedly knew of a "widespread delinquency problem in [Brazil,] the company's single largest market," based on a defendant's "multiple trips to check on operations in Brazil during the Class Period." 2019 WL 6115349, at *20 (S.D.N.Y. Nov. 18, 2019).

In light of Plaintiffs' failure to plead any motive or other plausible theory of fraud, the more compelling inference is that TMC was targeted by a self-interested short seller seeking to make a quick buck after TMC's contractually committed PIPE funding fell through. This does not satisfy the stringent requirements of the PSLRA. *See Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir. 2000).

---

[6] The core operations theory posits that senior executives are presumed to be aware of "information concerning the 'core operations' of a business." *See Rio Tinto*, 332 F. Supp. 3d at 816. Under the PSLRA, courts have expressed doubts about the viability of this theory and typically refuse to consider it as an independent basis for pleading scienter. *Reilly v. U.S. Physical Therapy, Inc.*, 2018 WL 3559089, at *18 (S.D.N.Y. July 23, 2018).

9

## IV.    PLAINTIFFS FAIL TO PLEAD LOSS CAUSATION

Plaintiffs' Opposition confirms that they also fail to plead loss causation.  *See* Mot. at 22-25.  Defendants showed that the first alleged disclosure—the PIPE lawsuits (AC ¶ 98)—did not reveal anything about the challenged statements.  Mot. at 23.  Plaintiffs concede that argument by failing to respond.  Opp. at 19-21; *Herrera-Amador*, 2021 WL 3012583, at *18.  The second alleged disclosure—the *Bloomberg* opinion piece—offered no new information and cannot be a corrective disclosure.  Mot. at 23-24.  Plaintiffs concede that TMC disclosed the "absence of the promised [PIPE] funds" and the existence of environmental risks and scientific debate *before* the September 13, 2021 Bloomberg opinion piece was published.  *Compare* Mot. at 23 (citing Ex. 8 at 99.1), *id.* at 5 (citing Exs. 2, 3), *with* Opp. at 20-21.  Plaintiffs now contend that the earlier disclosures were not sufficiently despondent.  Opp. at 21.  But a later disclosure that is merely a "negative characterization of already-public information[]" does not establish loss causation.  *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 512 (2d Cir. 2010).  The third alleged disclosure— the Bonitas Report (Ex. 5)—does not show causation, either.  Plaintiffs do not address any of the cases cited in the Motion that rejected causation allegations derived from similar reports.  Mot. at 24.  Plaintiffs also do not dispute that the Bonitas Report purports to be based exclusively on publicly available information and allegations that "are not statements of fact."  *Compare id.* (citing Ex. 5 at 15), *with* Opp. at 19-21.  Finally, Plaintiffs do not dispute that there is no corrective disclosure (and thus no loss causation) alleged for the challenged statements made during TMC's September 23, 2021 investor conference.  *Compare* Mot. at 25, *with* Opp. at 19-21.  As Plaintiffs acknowledge, loss causation is an element of a Section 10(b) claim (Opp. at 9), so neither of the challenged statements made on September 23, 2021 (Statements 10, 11) are actionable.

## CONCLUSION

The Complaint fails to state any claim and should be dismissed.

Dated:  September 26, 2022

Respectfully Submitted,

**LATHAM & WATKINS LLP**

/s/ *Jeff G. Hammel*
Jeff G. Hammel
1271 Avenue of the Americas
New York, New York  10020
Tel: (212) 906-1200
Fax: (212) 751-4864
Email:  jeff.hammel@lw.com

Colleen Smith (*admitted pro hac vice*)
12670 High Bluff Drive
San Diego, CA 92130-3086
Tel:  (858) 523-5400
Fax:  (858) 523-5450
Email:  colleen.smith@lw.com

Kristin N. Murphy (*admitted pro hac vice*)
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626-1925
Tel:  (714) 540-1235
Fax:  (714) 755-8290
Email:  kristin.murphy@lw.com

*Attorneys for Defendants TMC the metals company Inc. f/k/a Sustainable Opportunities Acquisition Corp., Gerard Barron, and Scott Leonard*